## COMMONWEALTH *vs.* MEHITABEL MASH.

Under the Rev. Sts. *c.* 130, § 2, if a woman, who has a husband living, marry another person, she is punishable, though her husband has voluntarily withdrawn from her, and remained absent and unheard of, for any term of time less than seven years, and though she honestly believes, at the time of her second marriage, that he is dead.

THE defendant was indicted, on the Rev. Sts. *c.* 130, § 2, for marrying a second husband, while her former husband was living.

At the trial in the municipal court, at August term 1843, there was evidence tending to prove that the defendant was married to Peter Mash on the 7th of December 1834, and that she afterwards cohabited with him until about the 10th of November 1838, when he left home in the morning, saying he should return to breakfast, and was not afterwards heard from by the defendant till about the middle of May 1842, when he returned; that on the 10th of April 1842, she was married, in Boston, by a clergyman of competent authority to solemnize marriages in this Commonwealth, to William M. Barrett, with whom she cohabited in Boston until she heard that said Peter Mash was still living, when she immediately withdrew from said Barrett, and had no intercourse with him afterwards; that she was of uniformly good character and virtuous conduct, and that she honestly believed, at the time of said second marriage, that said Peter Mash was dead; that during his absence, as aforesaid, she made many inquiries, and was unable to obtain any information concerning him, or to ascertain whether he was or was not alive.

The counsel for the defendant moved the court to instruct the jury, that if they believed all the facts which the aforesaid evidence tended to prove, she was entitled to an acquittal. But the court refused so to instruct the jury, and instructed them, that the defendant's ignorance that her said husband, Peter Mash, was alive, and her honest belief that he was dead, constituted no legal defence.

The jury found the defendant guilty, and she filed exceptions to the instruction of the court.

*Hallett*, for the defendant.

*S. D. Parker*, for the Commonwealth.

Shaw, C. J. The court are of opinion, that the instruction to the jury was right. The rule of law was certainly strongly expressed by the judge, no doubt in consequence of the terms in which the motion of the defendant's counsel was expressed The rule, as thus laid down, in effect was, that a woman whose husband suddenly left her without notice, and saying, when he went out, that he should return immediately, and who is absent between three and four years, though she have made inquiry after him, and is ignorant of his being alive, but honestly believes him to be dead, if she marries again, is guilty of polygamy. The correctness of this instruction must of course depend upon the construction of the Rev. Sts. *c*. 130, which regulate this subject. The 2d section imposes a penalty upon any person who, having a former husband or wife, shall marry another person ; with some exceptions. The 3d sec-. tion excepts from the operation of the statute " any person, whose husband or wife shall have been continually remaining beyond sea, or shall have voluntarily withdrawn from the other, and remained absent for the space of seven years together — the party marrying again not knowing the other to be living within that time."

It appears to us, that in a matter of this importance, so essential to the peace of families and the good order of so ciety, it was not the intention of the law to make the legal-. ity of a second marriage, whilst the former husband or wife is in fact living, depend upon ignorance of such absent party's be ing alive, or even upon an honest belief of such person's death Such belief might arise after a very short absence. But it ap pears to us, that the legislature intended to prescribe a more exact rule, and to declare, as law, that no one should have a right, upon such ignorance that the other party is alive, or even upon such honest belief of his death, to take the risk of marrying again, unless such belief is confirmed by an absence of seven years, with ignorance of the absent party's being alive within that time. It is analogous to other provisions and rules of law, by which a con-

tinued absence of a person for seven years, without being heard of, will constitute a presumption of his death. *Loring* v. *Steineman*, 1 Met. 204. Greenl. on Ev. § 41.

We are strongly confirmed in this construction of the statute, and that such was the deliberate expression of the legislative will, by reference to the report of the commissioners for revising the statutes. It appears, by their report upon this provision, that they prescribed a much more mitigated rule, and proposed to extend the exception " to any person whose former husband or wife, having been absent one year or more at the time of such second marriage, shall be believed to be dead." This proposal was stricken out by the committee appointed to consider the report of the commissioners, and the legislature adopted their amendment, and passed the law as it stands, without the proposed additional exception. This shows at least that the attention of the legislature was called to the subject, and that it was by design, and not through inadvertence, that the law was framed as it is.

It was urged in the argument, that where there is no criminal intent, there can be no guilt; and if the former husband was honestly believed to be dead, there could be no criminal intent. The proposition stated is undoubtedly correct in a general sense ; but the conclusion drawn from it, in this case, by no means follows. Whatever one voluntarily does, he of course intends to do. If the statute has made it criminal to do any act under particular circumstances, the party voluntarily doing that act is' chargeable with the criminal intent of doing it. On this subject, the law has deemed it so important to prohibit the crime of polygamy, and found it so difficult to prescribe what shall be sufficient evidence of the death of an absent person to warrant a belief of the fact, and as the same vague evidence might create a belief in one mind and not in another, the law has also deemed it wise to fix a definite period of seven years' continued absence, without knowledge of the contrary, to warrant a belief that the absent person is actually dead. One therefore who marries within that time, if the other party be actually living, whether the fact is believed or not, is chargeable with that criminal intent, by purposely doing that which the law expressly prohibits.

*Exceptions overruled.*

[The court did not pass sentence on the defendant, but took a recognizance for her appearance in court at a future day. On the 9th of July 1844 the defendant received a full pardon from the governor, which she brought into court on the 15th of said July, and pleaded the same in bar of sentence. Whereupon the court ordered her to be discharged.]