THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM C. SPOOR, Plaintiff in Error.

*Opinion filed June 18, 1908.*

1. BIGAMY—*belief that wife had obtained divorce is no defense to charge of bigamy.* Proof that the defendant in a prosecution for bigamy entered into the second marriage in the honest but mistaken belief that his former wife had obtained a divorce is no defense to the charge, nor is it admissible for the purpose of showing lack of criminal intent.

2. SAME—*divorce must be valid to constitute a defense to bigamy charge.* A defendant in a bigamy prosecution who relies upon a divorce as a defense to the charge must prove not only that the divorce was obtained but that it was granted by lawful authority.

3. IDEM SONANS—*names "Staunton" and "Stanton" are idem sonans.* There is no material variance between an indictment for bigamy which charges the name of the defendant's wife to be "Sarah Staunton" and proof showing the name to be "Sarah Stanton."

VICKERS, J., dissenting.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. R. B. SHIRLEY, Judge, presiding.

SHUTT & FAIN, for plaintiff in error.

W. H. STEAD, Attorney General, and F. L. HATCH, State's Attorney, (WILLIAM ST. J. WINES, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiff in error was found guilty of bigamy in the circuit court of Sangamon county and sentenced to the penitentiary. He was married November 16, 1903, at the age of eighteen, with the consent of his parents, to Sarah Stanton, aged nineteen. They lived together in Springfield, Illinois, for several months, when they separated, the wife going to Peoria and the husband to Missouri. After working as a teamster and farm hand at various places he re-

turned to Springfield about three months later and worked in a coal mine.  August 26, 1906, he was married to Grace Watts.  Both marriages were performed by the same justice of the peace and both licenses were obtained from the same county clerk.  Plaintiff in error lived with his second wife in Springfield until May 30, 1907, when he was arrested for bigamy on the complaint of the first wife.  The second wife, after an interview with the first, left plaintiff in error and did not again live with him.  Plaintiff in error introduced both wives to neighbors and friends during the respective times he lived with them and introduced the second wife to a number of persons who had met the first one.  His reputation appears to have been good.  The facts, so far, appear to be practically undisputed.  Plaintiff in error, however, attempted to prove that he had received from his first wife a number of letters,—one or more asking for money with which to procure a divorce, and one stating that she had obtained a divorce, and another telling him she was married again and hoped he was happy.  It does not appear from the record that before attempting to prove the contents of these letters he offered to show that the letters themselves could not be produced.  Questions were asked of his mother and sisters as to whether they had seen these letters, and as to whether the first wife had not admitted, in the office of the State's attorney, that she had written such letters.  These questions were objected to and the objections were sustained.  The court also sustained an objection to the introduction of testimony of plaintiff in error that the testimony of two of his friends would show that they had visited Peoria and saw his wife living there with a man as his wife, and that she told them she was married again.  It appears that these witnesses were not present, but a motion was made to continue the case to obtain their testimony.  This motion was denied.

Plaintiff in error contends that when he married the second wife he believed his former wife had obtained a de-

cree of divorce and re-married, but no evidence along this line was permitted to be presented to the jury. The refusal to admit this evidence is the chief error urged. This question has never been presented to this court for decision. While it is true that there is authority to the effect that belief in information as to the divorce or death of the former wife, when acted on cautiously and circumspectly and without fault, has been held to relieve one from the criminal intent of a second marriage, (Bishop on Statutory Crimes,— 3d ed.—secs. 596*a*, 596*b*, 608; *Queen* v. *Tolson*, 8 Am. Crim. Rep. 59;) yet we think that the decided weight of authority in this country holds that proof of the fact that the second marriage was entered into in good faith, under an honest but mistaken belief that the first wife was dead or had obtained a divorce, constitutes no defense to the charge of bigamy. (4 Elliott on Evidence, secs. 2871, 2872.) Where a legal divorce, granted before the second marriage, is offered as a defense, the burden is on the defendant to prove the validity of the decree. 4 Elliott on Evidence, sec. 2873.

It is contended in this connection that the evidence offered as to the divorce obtained by the first wife tended to show lack of criminal intent on the part of the plaintiff in error, and therefore should have been admitted. The intent may be inferred from the criminality of the act itself. The rule on this question is thus stated by Lord Mansfield: "Where an act, in itself indifferent, becomes criminal if done with a particular intent, there the intent must be proved and found; but where the act is in itself unlawful, the proof of justification or excuse lies on the defendant, and in failure thereof the law implies a criminal intent." *State* v. *Goodenow*, 65 Me. 30; see, also, *Hood* v. *State*, 56 Ind. 263; *Davis* v. *Commonwealth*, 76 Ky. 318; *State* v. *Zichfeld*, 23 Nev. 304.

The criminal statute on this question in this State reads as follows: "Whoever, having a former husband or wife

living, marries another person, or continues to cohabit with such second husband or wife in this State, shall be deemed guilty of bigamy, and be imprisoned in the penitentiary not less than one nor more than five years, and fined not exceeding $1000: *Provided,* nothing herein contained shall extend to any person whose husband or wife shall have been continually absent from such person for the space of five years together, prior to said second marriage, and he or she not knowing such husband or wife to be living within that time. Also, nothing herein contained shall extend to any person that is, or shall be at the time of such second marriage, divorced by lawful authority from the bands of such former marriage, or to any person where the former marriage hath been, by lawful authority, declared void." Hurd's Stat. 1905, chap. 38, sec. 28, p. 671.

From the wording of this statute the conclusion seems natural that in order to make the divorce a defense to prosecution for the second marriage it must be shown to have been legally granted. The naming of certain exceptions in the proviso may well be held to exclude other exceptions not named. (*Gaddis* v. *Richland County,* 92 Ill. 119; *People* v. *Town of Thornton,* 186 id. 162.) If it should be held that under this statute proof could properly be offered to show that a person charged with bigamy believed in good faith that his former spouse had obtained a divorce, then we cannot see that the provision in said section 28 that "nothing herein contained shall extend to any person that is, or shall be at the time of such second marriage, divorced by lawful authority from the bands of such former marriage," has any practical force or effect, for if such evidence as was offered in this case to prove the lack of intent be proper, then it would conclusively follow that the actual proof of divorce by legal authority could be proved without this express provision in the statute just quoted. Chief Justice Shaw in the case of *Commonwealth* v. *Mash,* 48 Mass. 472, speaking on this subject, on page 473, said:

"It appears to us that in a matter of this importance, so essential to the peace of families and the good order of society, it was not the intention of the law to make the legality of a second marriage whilst the former husband or wife is, in fact, living, depend upon ignorance of such absent party being alive, or even upon an honest belief of such person's death. Such belief might arise after a very short absence. But it appears to us that the legislature intended to prescribe a more exact rule, and to declare as law that no one should have a right, upon such ignorance that the other party is alive, or even upon such honest belief of his death, to take the risk of marrying again unless such belief is confirmed by an absence of seven years, with ignorance of the absent party being alive within that time." This reasoning applies with great force not only to the first exception in our statute as to absence for five years of the former husband or wife, but also with equal force as indicating the exact rule which the legislature intended to be applied when a divorce is urged as a defense. Manifestly, the legislature intended by this statute that there must not only be proof of divorce, but that this divorce must have been granted by lawful authority before it would be held a defense to the charge of bigamy. We think the trial court ruled correctly in excluding the evidence in question.

The indictment against the plaintiff in error spelled the name of his first wife as "Staunton" instead of "Stanton," as the testimony showed it to be. It is contended on behalf of plaintiff in error that the court erred in giving an instruction to the jury to the effect that if they believed from the evidence, beyond a reasonable doubt, that plaintiff in error was married to Sarah Stanton, it was not material that the indictment spelled the name "Staunton" instead of "Stanton." It was held by this court in *Rivard* v. *Gardner,* 39 Ill. 125, that "St. Clair" and "Sinclair" were *idem sonans.* In *Barnes* v. *People,* 18 Ill. 52, it was held that "Dougal" and "Dugald" by ordinary enunciation were not

distinguishable. See, also, *Gross* v. *Village of Grossdale,* 177 Ill. 248, in which "Bettie" and "Beattie" were held *idem sonans; Cartwright* v. *McGown,* 121 Ill. 388, where "Zerelday" and "Serelda" were decided to come within the rule; and *Lyon* v. *Kain,* 36 Ill. 362, in which case "Emonds" and "Emmons" were held to be the same in sound. We think the trial court instructed properly that the names here in question were *idem sonans,* and that the party might be as well known by one name as the other.

We find no error in the record. The judgment of the circuit court will therefore be affirmed.

*Judgment affirmed.*

Mr. JUSTICE VICKERS, dissenting.