## EVANS v. STATE OF INDIANA.

[No. 24,936. Filed February 16, 1927.]

1. NAMES.—*Application of doctrine of idem sonans usually question for the jury, but, when free from doubt, may be determined by the court.*— Usually, the question whether the doctrine of *idem sonans* applies to the name of a person used in a pleading so as to avoid a charge of variance is one of fact for the jury, though it may be determined by the court when the issue is free from doubt. p. 61.

2. NAMES.—*Whether names are idem sonans is not a question of spelling but of pronunciation.*—Whether names are *idem sonans* is not a question of spelling but of pronunciation, determined largely by usage, the doctrine being applicable if the names sound alike, though spelled differently. p. 61.

3. NAMES.—*Perfect identity of sound is not necessary to application of doctrine of idem sonans.*—In the application of the doctrine of *idem sonans,* perfect identity of sound is not required; practical similarity of sound is all that is necessary to make the doctrine applicable. p. 61.

4. NAMES.—The names "Mossie" and "Mauzy" are *idem sonans,* and a jury may be instructed to disregard the difference in spelling. p. 61.

5. CRIMINAL LAW.—*Court properly instructed the jury to disregard difference in spelling "Mossie" and "Mauzy."*—In a prosecution for murder of Ruby "Mossie," where the evidence showed that the deceased's name was spelled "Mauzy," the court properly instructed the jury to disregard the difference in the spelling of the two names, as they are *idem sonans.* p. 61.

6. CRIMINAL LAW.—*Refusal of instruction as to necessity of proving motive when evidence circumstantial not error when defendant confessed the crime.*—In a prosecution for murder, where the defendant made a written confession in which he stated his motive for commit-

ting the crime, the refusal of an instruction as to the necessity of proving the motive where the evidence is purely circumstantial was not error, as a confession is not circumstantial evidence. p. 63.

7. CRIMINAL LAW.—*Unnecessary to establish a motive for the crime charged.*—In this state, it is not necessary to establish a motive for the commission of the crime charged, as a motive may be inferred from the criminal act. p. 63.

8. CRIMINAL LAW.—*Instruction as to motive in committing the crime not necessary when proof of motive unnecessary.*—Although the court should instruct the jury as to all matters of law which are necessary for their information in giving their verdict (§2301 Burns 1926), it is not necessary to instruct as to the motive for the commission of the crime where it is not essential that it be established. p. 63.

9. CRIMINAL LAW.—*Refusal to give instruction as to necessity of state explaining all mystery connected with murder not error.*—In a prosecution for murder, the refusal of a requested instruction requiring the state to explain all mystery surrounding the death of the deceased sufficiently to remove all reasonable doubt was not error, the circumstances of the murder not being so mysterious as to require the giving of such instruction. p. 65.

10. CRIMINAL LAW.—*Refusal of instruction as to confession made under inducement held not error.*—An instruction that a confession made under inducement was not sufficient to warrant conviction without corroborating circumstances was correct (See §2271 Burns 1926. Reporter), and the refusal of another instruction on the same subject was not error. p. 66.

11. CRIMINAL LAW.—*Refusal of instruction as to alibi not error.*—Refusal of requested instruction as to an *alibi* by the defendant was not error in view of instructions given on that and other subjects. p. 66.

12. CRIMINAL LAW.—*Not error to refuse instruction covered by instructions given.*—The refusal to give a requested instruction was not error when the legal principles stated therein were incorporated in instructions given by the court. p. 67.

13. CRIMINAL LAW.—*Proof of corpus delicti held sufficient to warrant admission of defendant's confession.*—In a prosecution for murder, proof of deceased's death and that it resulted from a criminal assault with a deadly weapon was sufficient proof of the *corpus delicti* to warrant the admission in evidence of defendant's confession. p. 67.

14. CRIMINAL LAW.—The trial court's decision on the admissibility of a confession, made upon conflicting evidence, will not be disturbed on appeal. p. 67.

15. CRIMINAL LAW.—To authorize a new trial for newly-discovered evidence, such evidence must have been discovered after the trial. p. 68.

16. CRIMINAL LAW.—*Motion for new trial for newly-discovered evidence properly overruled where witness only had mentality of five year old child.*—In a prosecution for murder, the denial of a motion for a

new trial because of newly-discovered evidence, consisting of a confession by another than the defendant, was not error where the person making the confession was found to have the mentality of a child of four or five years.  p. 68.

17.  CRIMINAL LAW.—*Motion for new trial for newly-discovered evidence properly overruled when defendant knew of evidence at time of trial.*—A motion for a new trial because of newly-discovered evidence was properly overruled where the defendant knew of such evidence at the time of the trial, as such evidence must be discovered after the trial.  p. 68.

18.  CRIMINAL LAW.—Newly-discovered evidence, to warrant a new trial, must be such as would probably produce a different result on another trial, and must not be merely for impeachment or be cumulative.  p. 68.

19.  HOMICIDE.—*Testimony voluntarily given by defendant at coroner's inquest competent.*—In a prosecution for murder, statements of the defendant voluntarily made at the coroner's inquest may be used in evidence against him, and it is not necessary for the state to introduce his entire testimony.  p. 71.

20.  HOMICIDE.—*Exclusion of part of defendant's testimony at coroner's inquest was not error although state had introduced other parts.*—In a prosecution for murder, where part of defendant's testimony at coroner's inquest was introduced by the state, there was no error in excluding other parts of the same testimony which did not contradict or tend to explain the part submitted by the state.  p. 71.

21.  HOMICIDE.—Evidence *held* sufficient to sustain conviction for murder.  p. 72.

22.  CRIMINAL LAW.—*Establishment of alibi by the defendant is question for the jury.*—Whether the defendant has succeeded in establishing his defense of alibi is a question for the jury and will not be reviewed on appeal.  p. 72.

From Vanderburgh Circuit Court; *Charles P. Bock,* Judge.

Thomas Evans was convicted of murder in the first degree, and he appeals.  *Affirmed.*

*Benjamin J. Zieg* and *Oscar Birch,* for appellant.

*Arthur L. Gilliom,* Attorney-General and *U. S. Lesh,* for the State.

GEMMILL, C. J.—The appellant was indicted in the Vanderburgh Circuit Court for murder in the first degree.  It was alleged in the indictment that he killed

and murdered one Ruby Mossie by cutting, stabbing and mortally wounding her with a knife, on September 11, 1924. Upon arraignment, he entered a plea of not guilty. He was tried by a jury and was found guilty of murder in the first degree. The verdict fixed his punishment at imprisonment in the state prison during life, and judgment was rendered on the verdict. He assigns as error that the court erred in overruling his motion for a new trial.

The evidence shows that the woman named in the indictment as Ruby Mossie, but whose name was Ruby Mauzy, and who was twenty-one years old, was stabbed on September 11, 1924, between 4:30 and 5:30 o'clock p. m., in a field a short distance from the corner of Taylor and Lodge streets, in the city of Evansville. She died at St. Mary's Hospital in that city about 6:20 p. m. on that day. The last person who was seen with her prior to the time she was stabbed was the appellant. He was taken to police headquarters soon after her death, was questioned and was released. He was arrested the next morning; and on the afternoon of that day, after he had been taken to the morgue, where he viewed the body of the deceased, he signed by making his mark and swore to an extra-judicial written confession, in which he stated that he stabbed said Ruby Mossie. This confession was repudiated by him at the trial. After the trial and conviction of appellant, one Henry Chapman executed an affidavit in which he said that he stabbed the woman. That affidavit and supporting affidavits are made part of the motion for a new trial to show that appellant had newly-discovered evidence.

The confession of appellant which the court permitted to be introduced in evidence is as follows:

"Evansville, Indiana, September 12, 1924.

"My name is Thomas Evans. I live on Gilbert Ave. just off the Henderson traction line. I am now 26

years old and will be 27 next February 14th.

"I met Ruby Mossie about five weeks ago on the river in a family boat. I took her to my father's house, where I, my father and step-mother lived. I was supposed to pay five dollars a week board for her and five dollars for myself. I paid the board as long as I had the money.

"She left my father's house last Sunday a week' ago, on August 31st, 1924, and went to live with Frank Redman at 407 Lodge Ave. I was supposed to pay six dollars a week board for her there. I had not paid anything on this board yet. I saw Ruby every night when I came from work.

"Yesterday I was not working. I went to Redman's about seven o'clock in the morning. I saw Annie Redman and Ruby. I stayed at Redman's until Ruby was ready to go with me to look for a job for myself. I went to the Evansville Veneer Co., the Dyer Packing Co. (now American Packing Corporation), the Graham Glass Co. and Schmadels Furniture Factory.

"We then went back to Redman's. Ruby and I ate dinner there, eating bread, cakes and pies bought from a baker wagon. About two p. m. Ruby and I left. Ruby stopped at a store on Kentucky Ave. while I went down on Washington Ave. to look for a job. We then went back to Redman's. It was about 3:15 p. m. We stayed there until 4:30 p. m. We walked down Lodge Ave. toward Green River Road. On Lodge Ave., near the Henderson Traction Line, about two blocks from Redman's home, I pulled out my knife and opened it. I didn't say anything. Neither did Ruby. I stabbed Ruby Mossie in the neck with the knife. It is the same knife shown me by Chief Bell, and is a two blade bone handle knife.

"After I stabbed Ruby I went down Lodge Ave. and cut across toward the saw mill on Green River Road, the

shortest way to my home. I did not see Ruby any more that day, and I didn't go back to the place where I stabbed her.

"This afternoon, when Mr. Heeger and Chief Bell took me to Schaefer's morgue and showed me the body of Ruby Mossie, was the first time I saw her after stabbing her.

"I was jealous of Ruby because she started flirting with Joe Durbin and some other man whose name I do not remember. I made up my mind about a week ago to put her out of the way. She started flirting about a week and a half ago.

"The clothes I had on when I stabbed her are at my home. I had a black coat with green checks, and a pair of blue overalls.

"This is a true statement of how I killed Ruby Mossie, and is made of my own free will without any threats or promises from any person.

"(SIGNED) Thomas Evans     X   His mark
                       Witness W. J. Foley

"Subscribed and sworn to before me this 12th day of September, 1924.

                          "Walter J. Foley
                          "CITY CLERK

"This statement made in the presence of Ira C. Wiltshire, Supt. of Police, Emmett Bell, Chief of Detectives, and John Heeger. (Seal of the City Clerk affixed)."

The first alleged error as cause for a new trial presented by appellant in his brief is that the court erred in giving to the jury of its own motion instruction number nineteen. This instruction is as follows: "The indictment charges the killing of Ruby Mossie, spelled R-u-b-y M-o-s-s-i-e. Some of the evidence introduced herein was to the effect that the deceased's name was Ruby Mauzy, spelled R-u-b-y M-a-u-z-y. I instruct

you that on this point you may disregard the difference in the two names, and that proof of the killing of Ruby Mauzy, spelled R-u-b-y M-a-u-z-y, will support the charge in the indictment charging the killing of Ruby Mossie, spelled R-u-b-y M-o-s-s-i-e."

Appellant says that this instruction was erroneous for the reason that it invaded the province of the jury; and he contends that the question as to whether the two names were *idem sonans* was a question of fact for the jury and not of law for the court. Usually the question as to whether the doctrine of *idem sonans* applies to the name of a person as set forth in a pleading so as to avoid a charge of variance is one of fact for the jury. When, however, the issue is free from doubt, it may be determined by the court as a question of law. 19 R. C. L. 1336, §15. Whether names are *idem sonans* is not a question of spelling, but of pronunciation, determined largely by usage. If the names, though spelled differently, sound alike, the court may determine that they are *idem sonans* and instruct the jury to disregard the variance in spelling. Underhill, Criminal Evidence (3d ed.) §82; 29 Cyc 277; 21 Am. & Eng. Ency. of Law (2d ed.) 317; *Commonwealth* v. *Warren* (1887), 143 Mass. 568, 569, 10 N. E. 178; *State* v. *Williams* (1900), 68 Ark. 241, 57 S. W. 792, 82 Am. St. 288. In *People* v. *Spoor* (1908), 235 Ill. 230, 85 N. E. 207, 126 Am. St. 197, 14 Ann. Cas. 638, where the court instructed that it was not material that the indictment spelled the name "Staunton" instead of "Stanton," the Supreme Court held that the trial court instructed properly, as the names were *idem sonans*. In *Webb* v. *State* (1919), 149 Ga. 211, 99 S. E. 630, the court instructed the jury that if it should appear that the name of the party killed was spelled "Welsh" instead of "Welch," that these two words were *idem sonans* in law, and therefore it was immaterial whether his name was spelled

properly or improperly, so far as that feature of the case was concerned. It was decided by the higher court that there was no error in the instruction and that the law did not regard the spelling of names so much as their pronunciation or sound. In *Cleaveland* v. *State* (1863), 20 Ind. 444, the court instructed as follows: "Geissler and Geessler are near enough alike to make no difference in this case." This court held that said instruction was correct. It has been held that a mere variance in the letters with which the names are spelled is not fatal, if they are pronounced substantially the same. *People* v. *Gormach* (1922), 302 Ill. 332, 134 N. E. 756, 29 A. L. R. 1120. Perfect identity of sound is not required. Practical similarity of sound is all that can be insisted upon. *Puckett* v. *Hetzer* (1910), 82 Kans. 726, 109 Pac. 285, 136 Am. St. 127. The appellant cites and relies upon *Siebert* v. *State* (1884), 95 Ind. 471, 478, in which the court refused to instruct the jury that certain names were not *idem sonans*. This court held that the refusal of the lower court was not error. The matter was not free from doubt, and it was a question of fact for the jury. He also cites *Smurr* v. *State* (1883), 88 Ind. 504. In that case, this court said: "It is a well-established principle in criminal prosecutions that the name of the injured party must be proved as charged in the indictment. It is not essential, however, that the evidence must show that the name is correctly spelled in the indictment. When substantially the same sound is preserved, the variant orthography will make no difference. . . . If the orthography in the indictment and in the evidence indicated a variance in the sound of the name of the deceased, it was, perhaps, a proper question for the jury to determine from the evidence whether the sound as disclosed in the testimony was the same as that indicated in the indictment, and upon this point the court gave the jury a proper charge."

The Indiana cases relied upon by appellant are in

accord with the general rule stated. Instruction No. 19 was a proper instruction in this case.

Appellant claims that there was error because the court refused to give his tendered instruction No. 7. Said instruction reads: "While in cases where the fact is clearly established that the person accused of murder, actually killed the person with whose murder he is charged, it is not imperative that any motive should be established; yet in any case evidence establishing or tending to establish motive or lack of motive upon the part of the accused. to commit the crime with which he is charged is proper, and should be fairly considered by you. And in case where there is not direct evidence that the accused actually did the killing, but is purely circumstantial in its character, the question of the presence or the absence of motive becomes of greater importance." It is insisted by appellant that his confession was only circumstantial evidence. On that proposition, appellant relies upon *Damas* v. *People* (1917), 62 Colo. 418, 163 Pac. 289, L. R. A. 1917B 591. That case was overruled in *Mitchell* v. *People* (1924), 76 Colo. 346, 232 Pac. 685, 40 L. R. A. 566, which holds that a confession is direct evidence and not circumstantial. In Underhill, Criminal Evidence (3d ed.) §4, it is said: "Direct evidence of the crime is the evidence of an eye-witness that it was committed. This includes in criminal law the confession and admissions of the accused." And in Randall, Instructions to Juries §228, the following is stated: "A confession or admission by the defendant of actual participation in the act charged against him as a criminal offense constitutes direct evidence of guilt. In accordance with the rule stated above, therefore, where there is evidence of such a confession or admission, the court will not be required to charge on circumstantial evidence." The confession of appellant was direct evidence and the mo-

tive for the crime is therein stated. In this jurisdiction, it has been held that it is unnecessary to establish a motive for the commission of crime as a motive may be inferred from the criminal act. *Reynolds* v. *State* (1897), 147 Ind. 3, 46 N. E. 31; *Hinshaw* v. *State* (1897), 147 Ind. 334, 47 N. E. 157; *Wheeler* v. *State* (1902), 158 Ind. 687, 63 N. E. 975; *Morgan* v. *State* (1921), 190 Ind. 411, 130 N. E. 528. In *Porter* v. *State* (1910), 173 Ind. 694, 91 N. E. 340, where there was evidence introduced by the defendant that the killing was accidental and there was no evidence of any motive, it was held that he was entitled to an instruction that if the evidence failed to show any motive for the alleged crime, such fact would be a circumstance which the jury should consider in determining its verdict. That case is quite different from the instant case where the defendant's motive was shown by direct evidence. In charging the jury, the court must state to them all matters of law which are necessary for their information in giving their verdict. §2301 Burns 1926, §2136 Burns 1914. As it was not essential that a motive for the crime be established, it was not necessary that the court instruct as to motive. Where there is evidence as to motive, same should be considered in determining whether the accused is guilty of the act charged. In *State* v. *Aitken* (1912), 240 Mo. 254, 144 S. W. 499, the court said: "Motive is a circumstance for or against the defendant as the jury may find that it does not or does exist; and is to be weighed together with all other facts and circumstances in evidence. It does not follow from the fact that a circumstance is material that a jury must be instructed especially upon that circumstance." In the instant case, evidence of motive like other evidence to prove the crime, is covered by the court's instructions. If the evidence as to motive tended to show premeditation on the part of the defendant, then that subject is fully stated in in-

structions No. 3 and No. 6 given by the court on its own motion. The court did not err in refusing to give said instruction.

The refusal of the court to give instruction No. 9 tendered by the defendant, is complained of. Said instruction reads as follows: "Before the State can 9. ask the conviction of this defendant in this case it is required to prove beyond a reasonable doubt that the defendant, Thomas Evans, feloniously killed Ruby Mossie, or that he was present, aiding and abetting some other person in said killing at the time and place and in the manner and form alleged in the indictment. It is not sufficient if the State has enveloped the death of the said Ruby Mossie in mystery that is incapable of explanation, without inferring the defendant's guilt. To convict, the State is required to explain all mystery sufficient to remove all reasonable doubt and establish facts that are susceptible of explanation upon no reasonable hypothesis consistent with the defendant's innocence which points to his guilt beyond any reasonable solution and beyond all reasonable doubt." A similar instruction was given by the trial court in *Hinshaw* v. *State, supra.* However, in the instant case, it does not appear from the evidence that there were such mysterious circumstances as would require the giving of said instruction, which, in reality, is on the subject of reasonable doubt; and instructions Nos. 10, 12, 13, 14 and 15 on that subject, given by the court on its own motion, covered the subject-matter of the tendered instruction. In the Hinshaw case, this court said: "The court is not required to repeat an instruction or to give the law to the jury in the particular phraseology which the defendant sees fit to request. All the court is required to do is to express the law in its own language." It was not reversible error to refuse said instruction.

Appellant complains because the court refused to give his requested instruction No. 3, which reads thus: "The court instructs you that there has been introduced in evidence a confession of the defendant. The confession of the defendant made under inducement, with all the circumstances, may be given in evidence against him; but a confession made under inducement is not sufficient to warrant a conviction without corroborating evidence." Instruction No. 17 given by the court on its own motion was as follows: "I instruct you that a confession made under inducement is not sufficient to warrant a conviction without corroborating evidence." Same was sufficient.

Error is alleged upon the refusal of the court to give instruction No. 8 requested and tendered by the defendant. Same is as follows: "There has been evidence introduced by the State, tending to prove the theory of the State that Ruby Mossie was fatally cut and stabbed by Thomas Evans on Lodge Avenue, City of Evansville, County of Vanderburgh, Indiana; and that the cut and stab was inflicted on the evening of September 11, 1924. There has also been introduced evidence tending to show that the defendant on trial was at his home on Gilbert Avenue, County of Vanderburgh, Indiana, and not at the place of the tragedy on the evening of that day, ten public squares, more or less, from the place of the tragedy; and that the defendant did not wear a red sweater on the day of the tragedy, and that the party seen to leave the place of the tragedy was wearing a red sweater. If you believe the defendant on trial was away from the place of the tragedy and at his home on Gilbert Avenue during that time, or if you believe the defendant was not wearing a red sweater on the day of the tragedy and the party seen to leave the place of the tragedy was wearing a red sweater, or if you, or either of you, have reasonable

doubt as to whether the defendant was not at the place of the tragedy, or that the defendant was not wearing a red sweater on the day of the tragedy, and that the party seen to leave the place of the tragedy wearing a red sweater was not the defendant herein, and after considering this in connection with all the evidence and circumstances of the case you entertain any reasonable doubt as to the guilt or innocence of the defendant then you cannot find the defendant guilty." The court's instruction No. 18 in regard to evidence introduced by the defendant to prove an alibi, taken in connection with the instructions given by the court on the subject of reasonable doubt, was all that the court was required to give on the subject covered by said requested instruction.

The court refused to give, defendant's requested instruction No. 11. This instruction was stated in almost the same language as his instruction No. 8. The legal principles therein set out were given by the court in instructions given on its own motion and the refusal to give said instruction was not error.

It is claimed by the appellant that the court erred in overruling his objection to the introduction in evidence of the confession of the defendant for the reason that the *corpus delicti* had not been proved.

Prior to the admission of the confession in evidence, the death of the party alleged to have been killed was shown, and also the existence of a criminal agency as its cause. Appellant insists that no person had testified that the person named in the indictment had been murdered or killed. The fact that some of the evidence showed that the name of the person who was killed was not correctly spelled in the indictment was not fatal to the proof of the *corpus delicti*, as the names "Mossie" and "Mauzy" were *idem sonans*; and there was no doubt as to the identity of the person

named in the indictment. Before the confession was admitted, evidence was heard by the court, in the absence of the jury, regarding same. The trial court's decision on the admissibility of a confession, made upon conflicting evidence will not be disturbed on appeal. *Thurman* v. *State* (1907), 169 Ind. 240, 82 N. E. 64. This alleged error is not sustained.

The appellant contends that his motion for a new trial should have been granted on account of newly-discovered evidence, which is one of the causes stated in said motion. He claims that it could not have been discovered before the trial with reasonable diligence. As a part of said motion, is the affidavit of Henry Chapman, in which the following is stated: He knew Ruby Mauzy when she lived in a tent with Aubrey Quinn in the summer of 1924. About a week before Ruby Mauzy was killed, Quinn told him that he would give him ten dollars and a knife if he would kill her. He wanted her killed because she was running around with other men. Affiant had arranged to meet her about 3 o'clock on the afternoon she was murdered. He saw Thomas Evans and the woman kiss each other good-bye and Evans then left her. After that, Chapman met her and they had a quarrel and she tried to hit him. He grabbed her with his left arm around the neck and stabbed her in the neck and she fell to the ground. He then ran away, and at the wagon bridge at the Maley and Wert old mill, he took off the long, red sweater which he was wearing and put it under his arm. Just across the bridge that crosses Pigeon creek on Dixie Bee concrete road, he burned his red sweater and washed his bloody hands. He then walked up the road toward Princeton and caught a truck and rode into Princeton. The next day, he looked for work and failed to find it and then returned to Evansville. He knew what would happen to him for killing Ruby

Mauzy, but he could not stand by and see an innocent man, Tom Evans, punished. An affidavit of a truck driver shows that his story that he went to Princeton on a truck was correct. A deputy sheriff of Gibson county who put him in jail at Princeton said Chapman acted like a man who was not right and said he was wearing a red sweater. The chief of police of Princeton also said he was wearing a red sweater. This does not agree with Chapman's sworn statement in which he says he burned the red sweater at a time and place before he started up the Princeton road. There was evidence at the trial that a man wearing a red sweater was near the place where the stabbing occurred about the time it happened. It was contended when the motion for a new trial was presented that said party was Chapman. It is shown in the trial of the case that an attempt was made to use said Henry Chapman as a witness for the defendant. After one of the attorneys for the defendant and the court had asked him some questions, the court appointed two physicians to examine the witness as to his mental condition and report their findings to the court. After the examination, Dr. Edward P. Busse testified that he had had experience in mental cases and insane hospital work, that he had examined Henry Chapman at the jail and found that he was a low grade mental deficiency case, that he never had much mind, that he went to school five years, never got out of the primer and could not read or write, that he was irresponsible and apparently always had been, that he was of the irresponsible type who would lie as readily as tell the truth, and that the witness would consider him as responsible as a child between the age of four and five years. Dr. P. B. Combs gave testimony which agreed with that of the other physician, saying that Chapman had only the mentality of a child of four or five years, and that he would not realize what it meant to take an

oath. The court ruled that Chapman was not a competent witness on account of his mental incapacity; and the testimony which he had given was stricken out. Some of the parties making affidavits in support of the defendant's claim of newly-discovered evidence were brought into court and cross-examined as to the matters stated in their affidavits and some other witnesses were also examined. One witness testified that after the murder, Chapman said he did not know Ruby Mauzy. The affidavit of James Howard stated that he asked Ruby Mauzy various questions before she was taken to the hospital. She could not talk but nodded her head for "yes" and shook her head for "no." He said she indicated that the man who gave her the watch did not stab her, that Tom Evans did not stab her, and that the man who stabbed her had on a red sweater. One J. P. Monahan, who was the father-in-law of Howard, testified at the trial to part of the matters about which it was claimed Howard would testify. According to other evidence, appellant had given her the watch. Three witnesses testified that she did not answer questions as Howard stated that she did; but said that she indicated that the man who had given her the watch stabbed her. To authorize a new trial for newly-discovered evidence, same must have been discovered since the trial. It is apparent that appellant knew prior to his trial that Chapman had boasted that he had killed the woman. When the defendant at the trial attempted to use Henry Chapman as a witness, and he was not permitted to testify on account of his mental condition and his testimony was stricken out; no objection was made and no exception was taken to this action of the court. Newly-discovered evidence must be such as probably to produce a different result on another trial. It appears that the newly-discovered evidence was of such character that it would not do this. And a new trial

will not be granted where the purpose of same is for impeachment. The confession of appellant, although afterwards denied, was such that it would be believed in preference to that of Chapman. Some of the alleged newly-discovered evidence was merely cumulative. Such evidence will not warrant the granting of a new trial. There was no error in the lower court refusing to grant a new trial for newly-discovered evidence.

Another reason for a new trial which is relied upon is that the court erred in overruling the objection of the defendant to a part of the coroner's inquest over 19, 20. the body of Ruby Mauzy, offered and submitted in evidence by the state. Same were statements of the appellant. Statements voluntarily made by a defendant before the coroner, at an inquest upon the body of the person he is accused of killing, are properly admitted in evidence against him on the trial of the cause. *Sage* v. *State* (1891), 127 Ind. 15, 26 N. E. 667; *Davidson* v. *State* (1893), 135 Ind. 254, 34 N. E. 972. The testimony of the accused voluntarily given at a coroner's inquest may be subsequently employed against him to contradict his testimony at the trial. Underhill, Criminal Evidence (3d ed.) §114; *Jones* v. *State* (1898), 120 Ala. 303, 25 So. 204; *Steele* v. *State* (1898), 76 Miss. 387, 24 So. 910. Said evidence was competent. It was not necessary that all the evidence given by him at the coroner's inquest be introduced by the state. After the state had introduced part of the coroner's inquest, the defendant attempted to introduce another part of same, which was rejected by the court. The part which the defendant desired to introduce did not contradict or tend to explain the part submitted by the state. Same was not competent evidence.

Appellant insists that the verdict of the jury was contrary to law and that it was not sustained by sufficient evidence. The fact that Ruby Mossie was named in

the indictment as the party who was killed when her name was Ruby Mauzy, as shown by the evidence, did not make the verdict contrary to law.

From the evidence which supports the verdict, it appears that appellant was the last person who was seen with Mrs. Mauzy before she was stabbed and was with her a short time before that happened; and that his extrajudicial confession was voluntarily made. On the trial when he denied the confession, he said the officers threatened him and later promised to be his friend, and that he signed the confession because they told him he could go home if he did so. The jury evidently believed his confession and did not believe his alleged reason for executing it. The jail physician and the jailer at the county jail testified that the appellant was asked what the woman did after he stabbed her, and he answered: "She walked away." There was also evidence that the appellant admitted that the knife found a short distance from where the crime was committed and which was introduced in evidence belonged to him. His attempted alibi about which several relatives and some others testified was not established to the satisfaction of the jury. That was a matter for the jury's determination. There was sufficient evidence to support the verdict. This court will not weigh the evidence.

The court did not err in overruling the motion for a new trial. Finding no reversible error, the judgment is affirmed.