DEBOOR *v.* STATE OF INDIANA.

[No. 30,080. Filed May 10, 1962. Rehearing denied June 12, 1962.]

88

*Orr & Bridwell,* of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General, and *Harriette B. Conn,* Deputy Attorney General, for appellee.

BOBBITT, J.—Appellant was charged by indictment with the crime of first degree murder under Acts 1941, ch. 148, §1, p. 447, being §10-3401, Burns' 1956 Replacement.

The indictment charged the killing of a human being (his stepson) purposely, and with premeditated malice. Upon a plea of not guilty appellant was tried by jury, found guilty of murder in the second degree, and sentenced accordingly.

Fifty-five separate grounds are assigned for a new trial, fifty-four of which have been presented as errors for review by this court.

It has been our experience that the greater the number of errors assigned for review, the less likely there is to be merit in any of them, and this case is no exception to the rule.

However, there are a few alleged errors presented which deserve some attention, and we shall try to

accord these such consideration as, in our opinion, they may deserve.

*First*: Appellant asserts that the evidence is insufficient to show malice and intent and, therefore, is not sufficient to sustain a conviction of any higher degree of homicide than voluntary manslaughter.

There is evidence in the record that appellant, a short time before the shooting, threatened to "blow his [deceased] brains out", and at other times he had made threats against the deceased—that "he was going to bash his head in."

Following an argument between appellant and the deceased in their home over the use of the family automobile, the deceased, who apparently had removed the coil from the car, left the house and walked out to where the automobile was parked. Appellant followed him, and when they arrived at the automobile deceased said he would be back in a second and "took off running in the alley." Appellant then opened the trunk of the car, "took out the shot gun and two cartridges and got in the car and locked the door and loaded the gun." Appellant testified, as a witness in his own behalf, that the deceased returned to the automobile with "some kind of instrument and tried to pull open the door", saying, "I'm coming in there after you and kill you", and he then asked the deceased to "go away", and when he refused, he (appellant) shot the deceased through the window of the automobile.

Malice and intent could properly have been inferred from the evidence as above summarized, and it is sufficient to support a finding of guilty of murder in the second degree.

*Second*: Appellant further asserts that he was incapable of forming an "intent and malice to commit

murder" because he had been drinking a "great deal" the night before and on the day of the shooting. This does not justify the commission of murder.

While this court has held that,

"[T]he rule seems to be universally asserted by the authorities, that in all prosecutions for an assault with intent to kill, the intoxication of the defendant is admissible in evidence, and should be considered by the jury or court trying the case in determining whether he actually entertained the specific intent essential to the crime charged." *Booher* v. *State* (1901), 156 Ind. 435, 446, 447, 60 N. E. 156, 54 L. R. A. 391; *Eastin* v. *State* (1954), 233 Ind. 101, 104, 117 N. E. 2d 124.

However, we have also held that,

"While evidence of intoxication is admissible and may be considered in behalf of a person on trial for a crime involving specific intent, it acts as a complete and effective defense only when its degree is such as to render the accused incapable of entertaining the specific intent." *Yarber* v. *State* (1962), 242 Ind. 616, 179 N. E. 2d 882, 883; *Brattain* v. *State* (1945), 223 Ind. 489, 497, 61 N. E. 2d 462, 465.

There is evidence in the record that appellant "did not stagger", that he walked normally and spoke understandingly, and his actions were the same shortly before and after the shooting.

The degree of intoxication and the effect of alcohol upon appellant, DeBoor, were questions of fact to be determined by the jury. *Eastin* v. *State, supra* (1954), 233 Ind. 101, 104, 117 N. E. 2d 124; *Booher* v. *State, supra* (1901), 156 Ind. 435, 446, 447, 60 N. E. 156, 54 L. R. A. 391.

The evidence here is sufficient to support a finding that appellant was in full command of all of his

faculties and fully capable of maliciously intending the consequences of his act in shooting his stepson.

*Third*: Appellant further asserts that he had a right to defend himself and his property, when he was in a place where he had a right to be, and from his viewpoint it reasonably appeared that he would probably suffer personal injury.

Whether or not appellant shot and killed the deceased, Rex Curtis, in self-defense was an ultimate fact solely for the determination of the jury from the evidence. *Schlegel* v. *State* (1958), 238 Ind. 374, 378, 150 N. E. 2d 563.

The evidence on that question here is in dispute, and under such circumstances we will not disturb the verdict of the jury if it is supported by substantial evidence of probative value.

The jury could have found from the evidence hereinabove summarized that the killing was not done in self-defense. There is also other evidence in the record which supports the verdict of the jury on this point, but we deem it unnecessary to encumber this opinion further by a discussion thereof.

*Fourth*: It is also asserted that appellant was "emotionally unstable" and was afraid of his stepson (the deceased) because of numerous threats, which had been made by deceased to injure him and take his life. These were all matters included in the question of self-defense.

Threats alone are not sufficient to justify the taking of a human life and the weight to be given any testimony relating to threats directed at appellant by his stepson were properly considered by the jury in connection with the ques-

tion of self-defense. See: *Bange* v. *State* (1958), 237 Ind. 422, 426, 146 N. E. 2d 811.

*Fifth*: Appellant asserts error in refusing to give his tendered Instructions Nos. 4, 5, 6, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50 and 51.

We deem it unnecessary to burden this opinion by setting out all of these tendered instructions in full. Many of them are in parts repetitious and attempt to instruct the court in detail on subjects which are substantially covered by other instructions given by the court.

"A trial court, although requested so to do, is not required, nor would it be justified in emphasizing any particular phase of a case by repeating propositions of law, however applicable thereto they may be." *Fehlman* v. *State* (1928), 199 Ind. 746, 755, 161 N. E. 8.

The trial court is not required to accept tendered instructions and give them in the exact language in which they are submitted. It may, so long as they are proper, give instructions in its own language, and when a subject is substantially covered in an instruction given by the court, it is not error to refuse one tendered by the defendant which is in substance the same but is couched in different language. *Bange* v. *State, supra* (1958), 237 Ind. 422, 435, 146 N. E. 2d 811.

A careful comparison of appellant's Instructions Nos. 4, 5, 6, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 28, 35, 36, 37, 48, 49, 50 and 51, discloses that they are in substance the same and only emphasize a particular phase of the subjects covered by the Court's Instructions Nos. 15, 19, 28, 29, 30, 31, 32,

and 42. For these reasons the trial court properly refused to give them.

Appellant's tendered Instructions Nos. 39, 40, 41, 42 and 44 pertain to the question of "reasonable doubt," and are in substance the same as the court's preliminary Instructions Nos. 15, 16, 17 and 19, and they likewise were properly refused.

The subject matter of tendered Instructions Nos. 23 and 26 is substantially covered by the Court's Instructions Nos. 10 and 33, and it was not error to refuse them.

Tendered Instruction No. 30 pertains to the subject of intoxication and is covered, in substance, by the Court's Instructions Nos. 6, 7 and 33, and this instruction was also properly refused.

Also, the subject of tendered Instruction No. 47 is covered by the Court's Instructions Nos. 9, 10, 13 and 14; the subject of tendered Instruction No. 29 by the Court's Instructions Nos. 27 and 29; and tendered Instruction No. 38 by the Court's Instructions Nos. 6, 9, 36 and 41, and for this reason they were all properly refused.

Appellant's tendered Instructions Nos. 22, 27, 31 and 33 were improper because they constituted a comment as to the weight of the evidence. This the court may not do. *Bohan* v. *State* (1924), 194 Ind. 227, 239, 141 N. E. 323; Ewbanks Ind. Criminal Law (Symmes Ed.), Vol. 1, §419, p. 262.

Appellant's tendered Instruction No. 43 is mandatory in nature. It does not contain a complete statement of the law upon the subject covered and for this reason it was properly refused.

Finally, tendered Instructions Nos. 25, 32, 34, 45 and 46, all pertain to the crime of murder in the first

degree and since appellant was found guilty of ▮ murder in the second degree he could not have been harmed by the refusal of the court to give these instructions.

We find no reversible error in the refusal of the trial court to give any of the foregoing 45 instructions tendered by appellant.

*Sixth:* Appellant asserts that the trial court erred in overruling his motion to exclude a group of high school students from the trial because the deceased victim was a high school student 16 years of age, and the presence of other high school students in the court room "might, could, and would bias, prejudice and inflame the Jury to such an extent that the defendant [appellant] could not receive a fair and impartial trial."

There is no evidence that the presence of this group of high school students influenced the deliberations or finding of the jury in any manner.

While it is true, as appellant states, "[t]he court room may be cleared to prevent interference with or obstruction of the due administration of justice and the orderly conduct of the courts", however, there is no evidence in the record here to establish, nor is there any from which a reasonable inference could be drawn, that these high school students were guilty of any misconduct or that they attempted in any way, either by word or action, to influence the jury or obstruct the orderly administration of justice.

Article 1, §13 of the Constitution of Indiana provides that, "In all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed; . . . ."

There is nothing in the record here to show that these high school students were anything but a part of the "public" in attendance at the trial. There is no showing by appellant that his right to trial "by an impartial jury" was in any way prejudiced or violated. The exclusion of these high school students was a matter within the discretion of the trial judge, in the conduct of the trial, and this court will not interfere except for a clear abuse of discretion. We find not even a scintilla of evidence of abuse of discretion in the present case. Cf: *Hicks* v. *State* (1938), 213 Ind. 277, 286-287, 11 N. E. 2d 171, 12 N. E. 2d 501, (Cert. denied, 304 U. S. 564, 82 L. Ed. 1531, 58 S. Ct. 951).

*Seventh*: Finally, appellant asserts that he should be granted a new trial because of the alleged misconduct of the jury in receiving evidence not authorized by the court.

The alleged improper evidence consisted of a statement to one of the jurors by one Cleo Quinn, who was confined with appellant in the Marion County Jail, which was shown by affidavit by him and filed with the motion for a new trial, and is as follows:

"Around 7:00 P. M. on Friday, December 9, 1960, awaiting the return of the jury from the trial, I waited on the Washington Street steps of the Court House and accompanied the jury through the Court House cafeteria which was closed at the time, and then I asked one of the men on the jury, I believe it was juror #3 or #4 in the front row from the right as you face them. I asked him what he thought about the DeBoor case, and he said he thought he was guilty. I stated to him that he was the only honest man I had ever met in jail; that he did shoot the boy; that he was not guilty and was justified in shooting the boy. He said it was a matter of opinion, and that is all he said. Some one on the jury said he

sure wasn't as guilty as they were trying to make out, and when we got to the elevator 7 went up and 4 waited downstairs. I walked up the steps, entered the court room through which the jurors entered, and came out into the open court room section and talked to both baliffs [bailiffs] and the alternate juror."

It is clearly evident that Quinn contacted the jurors and the bailiff in an effort to assist the defendant-appellant in the trial. It is extremely difficult for us to see how appellant could have been prejudiced by the actions of Quinn. Certainly, the State was not responsible for this improper evidence, if such it can be called, and the appellant here has no cause for complaint.

While the actions of Quinn were wholly improper they were not such as to constitute grounds for reversal in this case. Cf: *Barlow v. State* (1827), 2 Blackf. 114, 115.

If this is reversible error, then any person on trial could defeat the ends of justice by having someone stalk the jury when they went out for their meals and attempt to engage one of the jurors in conversation in behalf of the defendant.

Appellant having failed to sustain his burden of showing reversible error, the judgment of the trial court must be affirmed.

Judgment affirmed.

Achor, C. J., Arterburn, Jackson and Landis, JJ., concur.

NOTE.—Reported in 182 N. E. 2d 250.