## BAKER *v.* STATE.

[No. 30,345. Filed January 10, 1964. Rehearing denied March 6, 1964.]

*Hartell F. Denmure,* of Aurora, for appellant.

*Edwin K. Steers,* Attorney General, and *Frederick J. Graf,* Deputy Attorney General, for appellee.

ACHOR, J.—Appellant was charged and tried before a jury and convicted of second degree murder.

Appellant, in said motion for new trial and in his brief, sets forth 21 causes for a new trial. However, because only Causes numbered 1, 5, 6 and 21 are supported by substantial argument, other asserted causes for new trial are considered waived. Rule 2-17 (e) and (f).

We will therefore consider appellant's grounds for new trial in the order above presented:

1. Did the court commit reversible error in overruling appellant's motion for change of venue from the county? It is appellant's contention that although the statute[1] [§9-1305, Burns' 1956 Repl.] merely grants

---

1. "When affidavits for a change of venue are founded upon excitement or prejudice in the county against the defendant, the court, in all cases not punishable by death, may, in its discretion, and in all cases punishable by death, shall grant a change of venue to the most convenient county. . . ." Acts 1905, ch. 169, §207, p. 584, as found in §9-1305, Burns' 1956 Repl.

a right to a change of venue, subject to the discretion of the court, that the denial of such change of venue under the circumstances constituted an abuse of discretion on the part of the trial court, and was in violation of Art. 1, §13 of the Indiana Constitution,[2] and the 6th Amend. to the Constitution of the United States.[3]

In support of his contention, appellant cites and relies upon the case of *Irvin* v. *Dowd* (1960), 366 U. S. 717, 6 L. Ed. (2d) 751, 81 Sup. Ct. 1639. Appellant also cites, with approval, language contained in the dissenting opinion of *State ex rel. Fox* v. *LaPorte C. C.* (1936), 236 Ind. 69, 138 N. E. 2d 875.

We have this observation, regarding the case of *Irvin* v. *Dowd, supra.* In that case this court affirmed the decision of the trial court which had denied a change of venue beyond an adjoining county. However, the U. S. Supreme Court, in effect, reversed both decisions, and ordered a new trial. In that case the defendant had confessed to the cold-blooded murder of six women in the Indiana, Kentucky and Illinois tri-state area. These events naturally received extensive and impassioned publicity. Eight of the twelve jurors selected to try the accused, stated that in their opinion he was

---

2. "In all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor." Art. 1, §13 Indiana Constitution.

3. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense." Amend. 6, United States Constitution.

guilty of the particular murder charged, but that, in deciding the case, they would not be guided by their present opinion as to the defendant's guilt, but would be guided solely by the facts presented at the trial and by the law as stated by the court. Until the case of *Irvin* v. *Dowd, supra,* this has always been the test by which to determine the qualification of a juror.[4] The trial court, who saw, heard, and believed the statements of these prospective jurors, accepted them as qualified jurors.

The Supreme Court of the United States, in reaching its decision, obviously assumed the role of a trial court and determined for itself the credibility of the prospective jurors, as witnesses, and the weight to be given to their testimony. We have not conceived this to be a proper function of this court, as a court of review.

In any event, the facts in the *Irvin* case, as indicated in the U. S. Supreme Court opinion, were altogether different from those existing in the case at bar. In that case the U. S. Supreme Court described the facts as follows:

" . . . With his life at stake, it is not requiring too much that petitioner be tried in an atmosphere undisturbed by so huge a wave of public passion and by a jury other than one in which two-thirds of the members admit, before hearing any testimony, to possessing a belief in his guilt. . . . "

In the present case, there was no evidence of an "atmosphere undisturbed by so huge a wave of public passion," nor did the evidence, taken at the hearing on

---

4. The 6th Amend. to the United States Constitution does not require that jurors be free of opinion, as to the guilt of the accused. In fact, Thomas Jefferson, speaking on the subject in his first inaugural address, stated that as one of "the essential principles of government," there be "trial by juries *impartially selected.*" [Emphasis added.]

the change of venue, indicate that there was such prejudice or odium, with regard to the appellant or the offense, that an unprejudiced jury could not be selected in the county.

We have no quarrel with the statement quoted by Emmert, J., in the dissenting opinion in *State* v. *La-Porte ex rel. C. C., supra* (236 Ind. 69, at pp. 90-91):

> " 'There can be no justice in a trial by jurors inflamed by passion, warped by prejudice, awed by violence, menaced by the virulence of public opinion or manifestly biased by any influences operating either openly or insiduously to such an extent as to poison the judgment and prevent the freedom of fair action. . . ' " [*Crocker* v. *Justices of the Superior Court* (1911), 208 Mass. 162, 179, 94 N. E. 369.]

However, the observation contained in the above statement is not applicable to this case. In this case the motion for change of venue contained only general conclusions on the subject of bias and prejudice, and was not supported by affidavits of disinterested residents of the county. At the hearing on the motion for change of venue, certain newspaper items were submitted, which we find to be neither inflamatory nor prejudicial in character. Furthermore, the state, in opposition to the motion for change of venue, introduced numerous witnesses who testified that neither were the newspaper items prejudicial, nor were they aware of any odium, bias or prejudice in the community which would interfere with a fair trial of the case.

We conclude that the trial court did not abuse his discretion in denying the motion for change of venue from the county and that appellant's constitutional rights were not violated by such action of the court.

We next consider appellant's second contention, that the jury's verdict was not sustained by sufficient evidence.

The statute under which the appellant was charged, convicted, and sentenced, is Acts 1905, ch. 169, §350, p. 584, as found in §10-3404, Burns' 1956 Repl., which reads as follows:

> "Whoever, purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree, and, on conviction, shall be imprisoned in the state prison during life."

Thus, it was incumbent here for the state to prove the *purposeful* and *malicious killing* by appellant of his paramour, Culla Horton, as charged in the indictment. *Warren* v. *State* (1963), 243 Ind. 508, 188 N. E. 2d 108.

This court has held that the intent and malice necessary to sustain a charge of murder in the second degree may be inferred from the circumstances surrounding the transaction. *DeBoor* v. *State* (1962), 243 Ind. 87, 182 N. E. 2d 250.

This court has also held that:

> "Concerning the absence of evidence of motive in the case, this Court has stated the rule as follows:
> " ' "With motives, in any speculative or psychological sense, neither the law, nor the tribunal which administers the law, has any proper concern. The outward *acts* of men are all that they profess, or are called upon to regulate or to punish. . . . And that motives may be inferred from conduct, as well as conduct from motives, is a familiar principle in the law of presumptive evidence." ' [*Hinshaw* v. *State* (1877), 147 Ind. 334, 364, 47 N. E. 157.]
> "Also, it has been held that motive may be inferred from the commission of the criminal act.

*Evans* v. *State* (1927), 199 Ind. 55, 64, 155 N. E. 203, 206; *Morgan* v. *State* (1921), 190 Ind. 411, 417, 130 N. E. 528, 530." *Byrd* v. *State* (1962), 243 Ind. 452, 185 N. E. 2d 422, 425.

Furthermore, this court has held that under like circumstances, whether or not purpose and malice have been proven, are questions of fact for the jury.

*Wahl* v. *State* (1951), 229 Ind. 521, 98 N. E. 2d 671.

On appeal, only the evidence most favorable to the state will be considered, as well as all reasonable and logical inferences that may be drawn therefrom.

*Tait* v. *State* (1963), 244 Ind. 35, 188 N. E. 2d 537.

The evidence most favorable to the state against appellant LeRoy Baker, including the necessity to determine whether or not appellant had a diseased or insane mind at the time the deceased was killed, is as follows:

Appellant and the deceased had been involved in extramarital romance for several months. On the night of November 9, 1961, at about 11:00 o'clock, both the appellant and decedent were in the Pub Tavern in Aurora. They were both sober when they left. Later, on the same night, a witness, who had lost his billfold in the vicinity, passed appellant's car, which was parked in a wide place off the road on a "lover's lane," on three different occasions. On the first or second occasion, he saw a woman's legs over the seat on the driver's side of the car. She was wearing black slacks or pedal pushers, and had on white shoes or sox. On the third occasion, seeing his billfold at about the same location, he stopped to pick it up and casually spoke to appellant Baker, who "didn't appear to be drunk."

This was about 12:30 a.m. The next day the victim's body, so attired, was found at the bottom of the embankment by the road where appellant's car had been parked the night before. The following day appellant was arrested and taken to Dearborn County Jail, where, on interrogation, he admitted that he had killed the decedent and left her where her body had been found. According to the coroner, she had suffered death by strangulation.

At the conclusion of appellant's evidence, evidence was presented on appellant's plea of not guilty by reason of temporary insanity and plea of not guilty by reason of mental disease. This testimony was to the effect that appellant was sane, both at the time of the criminal act and at the time of trial. Thus, the state, contrary to appellant's contention, did submit substantial evidence of probative value upon appellant's special plea of temporary insanity and diseased mind and thus sustained its burden of proof upon this issue. See: *Flowers* v. *State* (1947), 236 Ind. 151, 139 N. E. 2d 185; *Warren* v. *State* (1963), 243 Ind. 508, 188 N. E. 2d 108, *supra.*

As a third major contention, appellant asserts that the verdict is contrary to law because of deficiencies in the evidence. Only when the evidence is without conflict and leads to but one reasonable conclusion, and the verdict of the jury reaches a contrary conclusion, will the verdict be disturbed as being contrary to law. *White* v. *State* (1963), 244 Ind. 199, 191 N. E. 2d 486; *Warren* v. *State, supra; Bowens* v. *State* (1953), 231 Ind. 559, 109 N. E. 2d 91. Such are not the facts in this case.

As cause No. 21 of his motion for new trial, appellant contends that the trial judge erred in sustaining

the state's objection to the following question asked of Dr. Fong, the recognized medical expert:

"Q. Do you know of your own knowledge, and if you don't know please feel free to say, *that in the eyes of the law* that it is possible for a person to reach a point of intoxication where he is unable to control his impulses and determine right from wrong and that at such point that is considered a mental disease?" [Our emphasis.]

The above question is one involving a proposition of *law*. It does not establish evidentiary facts or tend to prove an ultimate fact in issue. The ultimate fact of whether or not LeRoy Baker was laboring under such legal disability as would constitute a complete defense to the crime charged was one to be decided by the jury, pursuant to instructions on the subject by the court, not this medical expert.

The question was, in terms of subject-matter, an improper one to ask. In any event, (1) Dr. Fong is not recognized as an expert on the law; (2) appellant made no offer to prove as to the excluded evidence,[5] and (3) by its Instruction No. 15, the trial court substantially stated the correct law in Indiana on this matter.

Judgment affirmed.

Landis, C. J., and Myers, J., concur. Arterburn, J., concurs, with opinion. Jackson, J., concurs in result.

CONCURRING OPINION

ARTERBURN, J.—I concur in the majority opinion, and particularly what is said about the United States Su-

---

5. In order to present any question regarding exclusion of evidence, the motion for new trial must set forth the question, *offer to prove*, and ruling. *Van Sickle* v. *Kokomo Water Works Co.* (1959), 239 Ind. 612, 617, 158 N. E. 2d 460. *Foust* v. *State* (1928), 200 Ind. 76, 84, 161 N. E. 371.

preme Court opinion in *Irvin* v. *Dowd* (1961), 366 U. S. 717, 6 L. Ed. 2d 751, 81 S. Ct. 1639. I point out first that in a prior 5-4 decision of the same case [(1959) 359 U. S. 394, 3 L. Ed. 2d 900, 79 S. Ct. 825] that court barged over into purely a state procedural matter. It held that it could nullify the decision of the Supreme Court of Indiana affirming the conviction of Irvin (*Irvin* v. *State* (1957), 236 Ind. 384, 139 N. E. 2d 898). Our opinion in that case was based upon and turned upon the purely state procedural principle that by reason of the escape of Irvin pending the time the trial court had before it his motion for a new trial, he thereby forfeited his right to have the court rule on such a motion or claim any error, and as a result we held he had no basis for any appeal to the Supreme Court.

Justice Frankfurter, dissenting to the assuming of jurisdiction by the United States Supreme Court, stated:

> "In view of so vital a limitation on our jurisdiction, this Court has, until relatively recently, been very strict on insisting on an affirmative showing on the record, when review is here sought, that it clearly appear that the judgment complained of rested on the construction of federal law *and was not supportable on a rule of local law beyond our power to question.*" (Our italics) *Irvin* v. *Dowd* (1959), 359 U. S. 394, at 409, 3 L. Ed. 2d 900, at 909, 79 S. Ct. 825, at 833.

The dissenting opinions in that case further pointed out that if the United States Supreme Court had any doubt as to whether our state Supreme Court opinion was based upon a federal question or purely a state procedural question, the proper thing to do would be to certify the case and question to our court for clarification upon that point. However, a majority of the United States Supreme Court seemed to be unduly

anxious to take over the case, and we thus find that that court ignored the basic rule that it must be clear that the case in the state court turned purely and solely on a federal question before the federal system will interfere in the state's jurisdiction of a criminal case.

When the case was finally taken over by the United States Supreme Court and reviewed on the merits ((1961), 366 U. S. 717, 6 L. Ed. 2d 751, 81 S. Ct. 1639), for a second time that court violated a well-established principle of appellate review. As Judge Achor states in the majority opinion, it assumed the role of a trial court and proceeded to weigh the evidence and determine the credibility of prospective jurors and witnesses, as against such a determination and finding of fact by Judge Eby, the trial judge who heard and saw such persons. When the habeas corpus case was appealed to the Seventh Circuit Court of Appeals on the ground that Irvin was not receiving due process of law because (as he alleged) the jury was prejudiced, Judge Schnackenberg, in the opinion of that court (*Irvin* v. *Dowd* (7 Cir. 1959), 271 F. 2d 552, at 555), stated:

> "The record reveals that the trial judge applied this act in this case. With painstaking care, the court, in asking questions of jurors expressing an opinion as to the guilt or innocence of defendant, founded upon reading newspaper statements, communications, comments or reports, or upon rumors or hearsay, required each such juror to state on oath whether he felt able, notwithstanding such opinion, to render an impartial verdict upon the law and evidence. Several of those who answered in the affirmative were accepted upon the trial jury. Defendant now seeks to have us determine, as a matter of federal constitutional law, that this action by the trial court deprived defendant of a fair trial.

"We have no right to question the intelligence, the truthfulness or the sincerity of these jurors, whose impartiality to render a verdict upon the law and the evidence was, after examination, determined to the trial judge's satisfaction, in the manner provided by the Indiana act.

"A careful reading of the entire record convinces us that the jury which tried defendant was properly qualified as a fair and impartial fact-finding body."

The United States Supreme Court, however, overruled the Seventh Circuit Court of Appeals and got down on the trial bench and substituted its finding as to the credibility of the jurors and the witnesses for that of Judge Eby of the trial court. This was a second violation of the principles of appellate review.

Aside from the ignoring of those two principles of appellate practice, we have a far more practical question presented by the United States Supreme Court in the selection of a jury. It would appear under the prevailing opinion of that court that the more horrible, revolting, or shocking the crime, the less likely would the State be able to secure a jury to try the defendant. Such a policy encourages the notoriety and violence connected with crime and its publicity over radio, television and other news media, thus making the securing of a jury impossible. The United States Supreme Court has lost sight of the duty which the State owes to protect the lives of the good citizens against criminal attack. That duty is as sacred as the duty to protect the innocent against conviction.

With the recent national tragedy of the assassination of our President and then the killing of the assassin, we are brought to a realization that such killers cannot be tried in any of our fifty states under the decisions of the United States Supreme Court. The long

period of publicity over radio, television and in the newspapers was carried to everyone in this country. The problem is, on last analysis, whether the shocking resentment of the people following such events, may be relied upon by the defendants to prevent the State from prosecuting such persons. It would be impossible to find a jury of intelligent men who have not some knowledge of and expressed some opinion about the events. Judge Schnackenberg stated in his opinion (*Irvin* v. *Dowd, supra*) :

> "If the State is so prevented from trying such a person, it means that the commission within a state of a multiplicity of criminal acts, followed by the usual publicity, actually immunizes the offender from prosecution. We reject such a conclusion as a law of this circuit."

However, the United States Supreme Court rejected the decision in that case. We ask: Will writs of habeas corpus in federal courts now be the means of freeing people charged with notorious crimes, even though the trial judge has conscientiously and impartially selected a jury of men in conformity with the law of the state? Will the United States Supreme Court continue to get down on the bench of the trial court and substitute its personal judgment as to the credibility of witnesses and as to the weight of the evidence over that of the trial judge who heard, saw, and knew those testifying? I am afraid this must be answered in the affirmative. In a recent case (*Fahy* v. *State of Connecticut*, December, 1963, 375 U. S. 85, 84 S. Ct. 229) the United States Supreme Court, in a 5-4 decision, again usurped the trial court bench and weighed the evidence. A dissenting opinion by Justice Harlan points this out when he stated:

"Evidentiary questions of this sort are not a proper part of this Court's business, particularly in cases coming here from state courts over which this Court possesses no supervisory power. This is not the rare instance of a state conviction which rests upon a record that is devoid of any evidence to support the charge against the defendant, (Cases cited)...."

There must be some reasonable limitation upon the abstractions of the United States Supreme Court when applied to the practicalities of everyday life.

The history of the Irvin case reveals the United States Supreme Court performing the function of a trial court rather than a court of appeals. Because of its violation of the principles of appellate review, such a decision can have no weight as a precedent.

NOTE.—Reported in 195 N. E. 2d 91.