SHELBY *v.* STATE OF INDIANA.

[No. 30,842. Filed January 8, 1968.]

*Arden W. Zobrosky,* of Marion, for appellant.

*John J. Dillon,* Attorney General, and *Raymond I. Klagiss,* Deputy Attorney General, for appellee.

ARTERBURN, J.—This is an appeal from a finding and judgment of guilty of second degree murder following a jury trial. The first contention made is that the verdict was not sustained by sufficient evidence. However, a brief review of the evidence, in our opinion, will show that the verdict was fully sustained.

It appears that the appellant lived in a small white house consisting of two bedrooms, a kitchen and a bathroom in Marion, Indiana; that he and Frank Wimsatt, the victim and decedent, occupied this house together, each paying part of the rent. They both seemed to have been rather intimately acquainted with one Jeannette Reynolds. On the night in question the appellant and the decedent with two other male friends, had met at the house and later Jeannette Reynolds joined them. During the evening an argument developed between the appellant and Wimsatt, the decedent. They quarreled over Jeannette Reynolds and the attentions that Frank Wimsatt showed her. The appellant had asked her to stay with him during that night, and it appears from testimony he resented the attentions that the decedent was showing her. The appellant ordered Frank Wimsatt out of the house. He refused to go. The appellant and Frank Wimsatt became engaged in an argument which was continuing as the other two guests left them. The argument culminated finally when the appellant went and got a large steak knife, and began to "rassle" with the decedent. Jeannette Reynolds while in the bedroom heard a chair crash, came in and saw the appellant standing over the decedent, with a steak knife sticking in his chest and him bleeding. The knife was in his chest "clear up to the handle." The decedent, who was still alive, stated that the appellant had stabbed him. Jeannette Reynolds asked the appellant why he did it and he said: "That is how much I love you."

Intent and malice can be drawn by the jury from the evidence sufficient to sustain a charge of second degree murder.

*Baker* v. *State* (1964), 245 Ind. 129, 195 N. E. 2d 91; ■ *Dickinson* v. *State* (1944), 222 Ind. 551, 55 N. E. 2d 325.

Here we have threats and an assault, from which the jury may make reasonable inferences of malice and intent. *Wahl* v. *State* (1951), 229 Ind. 521, 99 N. E. 2d 671.

It is finally urged that the case of *Escobedo* v. *Illinois* (1964), 378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977 is applicable here. The record and evidence, appellant contends, show that he was arrested in the early hours of October 11, 1964, at the scene of the killing by a police officer. On the same day, about 10:45 a.m., the police obtained a statement from the appellant which was introduced in the evidence. (State's exhibit 11) The record is unclear as to whether or not the appellant was thereafter released. The statement he made was his version of how the killing occurred, namely, through an accident while he and the victim were scuffling, without any intent on his part to stab the decedent. Thereafter, the appellant on October 19, 1964, was indicted and arrested again and brought into the Grant Circuit Court on the 30th and a pauper attorney appointed for him.

The appellant contends that he was entitled to counsel "immediately upon his arrest and the focus of inquiry on him." When the statement was first obtained, it appears to us that the police were making a required and quite normal investigation of what had occurred at the time of the killing. They asked him for his version of what happened, and he appears to have given it voluntarily. The trial took place on April 27, 1965. At the trial this statement, which as we have said, was the appellant's version of an accidental injury to the decedent, was introduced in the evidence and appellant's counsel, upon inquiry by the court as to whether he had any objection to the introduction of this written statement (State's exhibit 11) stated: "No objections." Later the appellant took the witness stand and in fact repeated the story of his version of

the killing, which was substantially the same thing as he had previously stated in the written exhibit which was introduced and to which he made no objection.

From the facts set out in the record before us, it does not appear that the appellant was prejudiced. It appears that he was promptly given an attorney after he was indicted. At the time of the statement he gave, the record does not show that there was any indictment or preliminary charge pending against him, nor did he ask for an attorney.

Finally, we must point out not only did the appellant, through his counsel, knowingly waive any objections to the statement when it was offered, but also the error is not set up in the motion for a new trial which his counsel prepared and of which his counsel had full knowledge at the time the motion for a new trial was prepared and filed. It seems to us if there ever was a knowing and informed waiver of alleged error, it occurred in this case where counsel openly and specifically, in the presence of the appellant, said there were no objections to the exhibit being introduced, and also failed to set forth any grounds why it was objectionable in the motion for a new trial. *Denton* v. *State* (1965), 246 Ind. 155, 203 N. E. 2d 539; *Lemay* v. *State* (1963), 244 Ind. 652, 190 N. E. 2d 189; *Parker* v. *State* (1962), 243 Ind. 482, 185 N. E. 2d 727.

The judgment is affirmed.

Lewis, C. J. and Mote, J., concur.

Hunter and Jackson, JJ., concur in result.

NOTE.—Reported in 232 N. E. 2d 363.