**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Jul 13 2012, 8:44 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**TIMOTHY LOGAN**
**MARLIN R. BENSON**
Benson, Pantello, Morris, James & Logan, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEES:

**BENJAMIN D. ICE**
**WILLIAM A. RAMSEY**
Murphy Ice & Koeneman LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| SWAMMI, INC., f/k/a SWAMI, INC., ) | |
| ) | |
| Appellant-Plaintiff, ) | |
| ) | |
| vs. ) | No. 02A01-1109-PL-417 |
| ) | |
| SHAMBAUGH, KAST, BECK, WILLIAMS, LLP ) | |
| and JOHN S. BLOOM, ) | |
| ) | |
| Appellees-Defendants. ) | |

APPEAL FROM THE ALLEN CIRCUIT COURT
The Honorable Natalie R. Conn, Judge
Cause No. 02C01-0801-PL-17

**July 13, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

In 2008, Swammi, Inc.[1] sued John Bloom and his law firm Shambaugh, Kast, Beck, and Williams, LLP, (collectively, "Bloom"), for legal malpractice based on Bloom's representation of Swammi in litigation involving some of Swammi's real estate sold at a tax sale. A jury found Bloom not liable. We affirm.

## FACTS AND PROCEDURAL HISTORY

We summarized the underlying tax sale action in *Retz v. Swami, Inc.*, No. 02A03-0706-CV-254, 2008 WL 204681 (Ind. Ct. App. Jan. 25, 2008), *aff'd on reh'g, trans. denied*:

> Swami is a for-profit Indiana corporation. In 1999, Swami purchased a parcel of real property in Allen County, located at 9100 Illinois Road in Fort Wayne ("the Property"). Swami paid no property taxes on the Property from May 11, 2000, through July 2002. In July 2002, the Allen County treasurer's office certified the Property for placement in the 2002 Allen County fall tax sale.
>
> At all relevant times, Swami's principal place of business was the residence of its president, Subhash Reddy. Reddy changed residences four times during the three-and-a half-year period following Swami's purchase of the Property, but Swami never filed a notarized change of address affidavit or notarized letter seeking a change of address. The Allen County auditor's office sent a notice of tax sale to Swami's address of record, but it was marked "Undeliverable as Addressed" and returned to the auditor's office. Appellant's App. at 535–36, 547. The auditor's office searched its records and a local phonebook, but found no other address for Swami. The auditor's office sent a second notice to Swami addressed to an adjoining property owned by Swami, but that was returned to the auditor's office marked "No Such Number." *Id.* at 537, 548. Additional notice of the tax sale was posted at a public place of posting and published in two local newspapers for three consecutive weeks prior to the tax sale.
>
> Retz bought the Property at the 2002 tax sale. The price Retz paid for the Property exceeded the delinquent fees and taxes owed on the Property, and the surplus was claimed by Swami's agent, National Cash Refund, Inc.
>
> During the one-year redemption period, the auditor's office sent notice to Swami that the tax sale had taken place. The notice was returned as

---

[1] In our prior decisions involving this appellant, its name is spelled "Swami." In this appeal, the appellant refers to itself as "Swammi."

undeliverable. *Id.* at 540, 562. A title search on the Property revealed Mid Am Bank, the mortgagee of record, as the only person with a substantial property interest of public record. The auditor's office also sent notice of the tax sale to Mid Am Bank, which was accepted.

After the redemption period expired, another notice was sent to Swami and returned. *Id.* at 542, 567. An identical notice sent to Mid Am Bank was accepted. On October 8, 2003, the auditor's office filed a petition with the trial court, requesting authority to issue a tax deed to Retz for the Property. On November 14, 2003, the trial court ordered the issuance of the tax deed to Retz. *Id.* at 118. On November 24, 2003, the auditor's office transferred and conveyed to Retz a tax deed for the Property.

On January 12, 2004, Swami filed its verified objection to the issuance of tax deed, in which it stated that it had never received notice of the tax sale and had no actual knowledge of the tax sale or actions related to it. *Id.* at 123-24. On January 30, 2004, Retz moved to intervene. On March 31, 2005, Retz filed a motion for summary judgment, arguing that

> [ (1) ] the Auditor's Office properly performed all essential acts concerning the tax sale and substantially complied with the statutory procedures, thus satisfying due process requirements [; (2) ] Swami failed to rebut the *prima facie* evidence regarding the regularity and validity of the tax sale proceedings [; (3) ] notice to Swami at its last known address was adequate and Swami's failure to inform the Auditor's Office of its current address precludes its lack of notice defense [; (4) ] Swami waived its right to the [Property] by claiming the entire Surplus fund from the County. *Id.* at 63, 66, 68, 71. Swami filed a cross motion for summary judgment, arguing that it satisfied the statutory requirements necessary to defeat the tax deed, that it was entitled to a cancellation of the tax deed based on theories of equity, and that the Property was taken from it without just compensation in violation of federal and state constitutional guarantees. *Id.* at 154-68. The trial court granted Retz's motion for summary judgment and denied Swami's cross motion for summary judgment.
> Swami appealed, raising the following issues:
> 1. Whether the trial court erred when it applied the plain meaning of the words and phrases in Indiana Code Section 6–1.1–25–16 and refused to set aside a tax sale.
> 2. Whether Swami is entitled to relief under Indiana Trial Rule 60(B) based on an alleged misrepresentation by an employee in the Allen County Treasurer's Office regarding the amount of real property taxes due.

3

3. Whether [the limitation of remedies in] Indiana Code Section 6-1.1-25-16 violates a taxpayer's [substantive] due process rights under the United States Constitution and the Indiana Constitution.

*Swami, Inc. v. Lee,* 841 N.E.2d 1173, 1174 (Ind. Ct. App. 2006), *trans. denied.* In affirming the trial court, we held that (1) Swami failed to inform the auditor's office of its change of address and therefore was not entitled to equitable relief; (2) Swami did not file a Trial Rule 60(B) motion with the trial court and therefore could not challenge the tax deed on that basis at the appellate level; and (3) the limitation of remedies provided by Indiana Code Section 6-1.1-25-16 did not violate substantive due process rights. *Id.* at 1180-81. We noted that Swami did not contend that the auditor failed to comply with notice requirements. *Id.* at 1180.

On March 8, 2006, Swami petitioned for transfer to the Indiana Supreme Court presenting the following question:

Whether this case presents an important question of law and a question of great public importance that has not been, but should be, decided by the Supreme Court where the Court of Appeals concluded that equity should not intervene to set aside a tax sale deed where a landowner's representative was given inaccurate information about property taxes owed and a pending tax sale by a county official responsible for collection of property taxes.

Appellant's App. at 306. On April 26, 2006, the United States Supreme Court decided *Jones v. Flowers,* 547 U.S. 220 (2006), in which the court held that when notice of a tax sale is mailed to the owner and returned undelivered, the Due Process Clause of the Fourteenth Amendment requires the government to take additional reasonable steps to provide notice before taking the owner's property. 547 U.S. at 234. On May 16, 2006, while transfer was still pending, Swami filed a verified motion to remand so that the trial court could examine whether Indiana's statutory notice requirements satisfied federal due process rights in light of the *Flowers* decision. *See* Ind. Appellate Rule 37 ("At any time after the Court on Appeal obtains jurisdiction, any party may file a motion requesting that the appeal be dismissed without prejudice or temporarily stayed and the case remanded to the trial court or Administrative Agency for further proceedings."). On July 6, 2006, the Indiana Supreme Court denied transfer without ruling on Swami's motion to remand.

On August 25, 2006, Swami filed the motion for relief from judgment pursuant to Trial Rule 60(B)(6) that is the subject of this appeal. In the motion, Swami alleged that the "Allen County Auditor's efforts to provide notice to Swami of the tax sale and petition for tax deed were insufficient to satisfy due process given the circumstances of this case. Consequently, the tax

4

sale and tax sale deed are void." Appellant's App. at 448. The trial court granted Swami's motion. Retz appeals.

2008 WL 204681 at *1-3 (footnotes omitted).

We reversed the grant of Swammi's motion for relief from judgment, holding its claim that the notice provided by the auditor was in violation of his due process rights was available and could have been litigated during its earlier challenge. *Id*. at *5. Because Swammi had not argued to the trial court that the auditor's notice violated federal due process in its first challenge, we would have found the issue waived on direct appeal had Swammi attempted to raise it there. *Id*. n.13. Swammi was therefore precluded by the doctrine of *res judicata* from claiming that the tax deed was void due to inadequate notice. *Id*.

While we reversed based on *res judicata*, we noted our disagreement with Swammi's assertion that *Flowers* drastically modified Indiana law:

> The *Flowers* court noted that its decision was in accord with its previous decisions, in that these decisions all "deemed notice constitutionally sufficient if it was reasonably calculated to reach the intended recipient when sent." 547 U.S. at 226. The *Flowers* court then observed that "[t]he Courts of Appeals and State Supreme Courts have addressed this question on frequent occasions, and most have decided that when the government learns its attempt at notice has failed, due process requires the government to do something more before real property may be sold in a tax sale." *Id.* at 227. Indeed, the *Flowers* court stated, "In particular, we disclaim any new rule that is contrary to [*Dusenbery v. United States,* 534 U.S. 161 (2002)] and a significant departure from [*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306 (1950)]. *Id.* at 238.

*Id*. n.12.

5

Swammi brought this legal malpractice action against Bloom. He had represented Swammi in its appeal from a summary judgment for Allen County, which issued a tax deed for the Swammi property. Swammi claimed Bloom was negligent in his representation because, relying on *Elizondo v. Read*, 588 N.E.2d 501, 504 (Ind. 1992), *abrogated by Jones v. Flowers*, 547 U.S. 220 (2006),[2] he declined to make a due process argument in challenging the tax sale and instead made an equitable argument.[3] A jury found in favor of Bloom.

## DISCUSSION AND DECISION

### 1.    Testimony about Legal Conclusions

Swammi first argues the trial court should not have allowed Bloom's witnesses to testify as to legal conclusions in the form of their opinions that the law at the time of Bloom's representation foreclosed a due process argument for Swammi. As Swammi submitted its own expert testimony on the same matters, that argument is not available to it on appeal.

"[I]t is well settled that error in admitting evidence at the trial is not available on appeal where the complaining party submits evidence to substantially the same effect." *State*

---

[2] *Flowers* was decided after Bloom's representation had ceased.

[3] In *Elizondo*, our Indiana Supreme Court said:
> the Auditor will be considered to have been aware of any address for the Elizondos that is contained in the auditor's own records to the extent that the alternate listing linked the persons therein to the property upon which taxes were delinquent. This also suggests, however, that the auditor does not have knowledge of, nor should be required to seek knowledge of, information contained in records or documents not routinely maintained by and within the auditor's office. For example, contrary to the Elizondos' argument, the auditor should not be required to resort to the most recent telephone directories to ascertain a different address, nor should the auditor be required to search the records of other offices such as the recorder or the court clerk. *All that is required is that the auditor send notice to the owner's last known address, that is, the last address of the owner of the specific property in question of which the auditor has knowledge from records maintained in its office*.

588 N.E.2d at 504 (emphasis added).

*v. Monninger*, 243 Ind. 174, 176-77, 182 N.E.2d 426, 427 (1962). In that condemnation action, the State contended evidence of the Monningers' tax returns and their income should not have been admitted. But the State had elicited testimony from its own witness about the Monningers' income. We noted the State "introduced evidence to the same effect as the State had earlier contended was incompetent when it came from the adverse party. The subsequent introduction by the State of substantially the same evidence as it had previously objected to, waived such error as may have been committed." *Id*. at 177, 182 N.E.2d at 427.

In the case before us, Swammi elicited testimony from its expert about whether a due process argument would have been available to Bloom. The expert testified that under the due process protections of the Fourteenth Amendment, if "a property owner doesn't receive notice that their [sic] property is going to be taken away . . . the whole process can be invalid." (Tr. at 464.) He explained that tax sale notices are necessary under the Fourteenth Amendment, and if notice isn't received in the mail, "you've got to follow up. You've just got to try and find these people in every way you possible [sic] can." (*Id*. at 492.) He opined Bloom should have raised a due process argument. When asked if he had formed an opinion about whether the county auditor provided Swammi notice that was "reasonable [sic] calculated and [sic] under the circumstances, to appraise [sic] Swammi of the pendency of the action that would have afforded Swammi an opportunity to present their [sic] objections in the action that was taken" with respect to the tax sale, he replied "The Auditor did not provide that notice." (*Id*. at 494.)

That testimony from Swammi's expert amounts to evidence to the same effect as that

evidence Swammi now contends should not have been admitted when it came from Bloom. Swammi cannot now argue Bloom should not have been permitted to offer testimony about the availability *vel non* of its due process argument.

### 2.     Testimonial Rulings

Swammi appears to be arguing certain trial testimony should not have been permitted or was improperly limited.[4] It first addresses Bloom's response "when asked why he did not address *Mullane*." (Appellant's Br. at 31.) Swammi asserts an "expert must have something to say of methodology ensuring a 'reliable' and 'supportable' opinion. Evid. R. 702." (*Id.*) Rule 702 provides in part "[e]xpert *scientific* testimony is admissible only if the court is satisfied that the *scientific principles* upon which the expert testimony rests are reliable." (Emphasis added.) Swammi does not explain how Bloom's testimony about his decision in the prior litigation not to address *Mullane* amounts to "scientific" testimony that requires evidence of its "reliability" based on "scientific principles." We therefore are unable to address that allegation of error. *See*, *e.g.*, *Thacker v. Wentzel*, 797 N.E.2d 342, 345 (Ind. Ct.

---

[4] Appellate counsel are required to include in a brief a statement of the issues presented for review. Ind. Appellate Rule 46(A)(4). Swammi states this issue as: "The Court Abused Its Discretion Allowing Shambaugh's Unreliable 'Bottom Line' While Preventing Inquiry into the Actual 'Course of Events.'" (Appellant's Br. at 29.)

Nothing is more important in an appeal than a concise statement of the issues on which an appellant relies, and we must be able to discern the issues from an appellant's brief, without reference to the record. *Lakes and Rivers Transfer, a Div. of Jack Gray Transport, Inc. v. Rudolph Robinson Steel Co.,* 691 N.E.2d 1294, 1294 n.1 (Ind. Ct. App. 1998). In *Moore v. State,* 441 N.E.2d 220, 221–22 (Ind. Ct. App. 1982), we dismissed the appeal when the statement of the issues merely referred us to the issues that had been raised in the appellant's motion to correct error. We determined such a statement of the issues did not amount to a good faith effort to comply with our rules, *id.* at 222, and we noted that while the strictness of our rules was sometimes "relaxed," that was true only in cases where we could clearly understand from the briefs the questions sought to be presented. *Id.* at 221.

App. 2003) (noting Ind. Appellate Rule 46(A)(8)(a) requires the argument section of an appellant's brief "must contain the contentions of the appellant on the issues presented, supported by cogent reasoning"). Pursuant to that rule, we will not consider an appellant's assertion on appeal when he has not presented cogent argument supported by authority and references to the record. *Id.* "We will not become an advocate for a party, nor will we address arguments that are too poorly developed or improperly expressed to be understood." *Terpstra v. Farmers and Merchants Bank,* 483 N.E.2d 749, 754 (Ind. Ct. App. 1985), *reh'g denied*, *trans. denied*.

Next, Swammi addresses testimony by Bloom's expert, Gregory Schmith. A trial court's determination regarding the admissibility of expert testimony under Rule 702 is a matter within its broad discretion, and will be reversed only for abuse of that discretion. *Sears Roebuck & Co. v. Manuilov*, 742 N.E.2d 453, 459 (Ind. 2001). Swammi has not demonstrated an abuse of discretion.

Swammi first appears to assert Schmith's "preparation," (Appellant's Br. at 31), was inadequate, but makes no argument why an "unprepared" witness, expert or otherwise, should not be permitted to testify. We believe the level of an expert's "preparation" goes to the weight of his testimony, not its admissibility; the trial court did not err in declining to exclude Schmith's testimony on that ground. *See*, *e.g.*, *Dorsett v. R.L. Carter, Inc.*, 702 N.E.2d 1126, 1128 (Ind. Ct. App. 1998) (admissibility of expert testimony does not hinge on

We prefer to decide appeals on the merits when possible, *id*. at 222, and we choose to do so in this case. For purposes of resolution of this case, we adopt Bloom's statement of the issues. However, we remind Swammi's counsel that the absence of a useful statement of the issues subjects an appeal to dismissal. *Id.*

9

the expert's disclosure of the facts and reasoning that support his opinion. The lack of facts and reasoning, which may be brought out on cross-examination of the expert, goes to the weight to be given the expert's opinion, not its admissibility), *trans. denied*.

Swammi next recounts several passages of Schmith's testimony and concludes, without explanation, "[s]urely the testimony had not reached the reliable mark." (Appellant's Br. at 32.) As Swammi has not provided cogent argument explaining why the testimony was too unreliable to be permitted, we decline to address that allegation of error. *See Thacker,* 797 N.E.2d at 345 (we will not address arguments that are too poorly developed or improperly expressed to be understood).

Finally, Swammi states: "**We assign related error in the censuring of young Mr. Williams**[.]"[5] (Appellant's Br. at 31) (bold type in original). Swammi quotes at length from testimony by Williams and Schmith, objections to it, and the court's comment on it, but offers no explanation why the testimony was improperly limited by the trial court. We are therefore unable to address that allegation of error.

### 3. Impeachment

As best we can determine from Swammi's brief, it is alleging error in the use of evidence of disciplinary proceedings to impeach the qualifications of Swammi's expert Stephen Eslinger,[6] who Swammi called to testify that attorney Bloom did not meet the

---

[5] Swammi does not explain in this section of its argument who "young Mr. Williams" is, but it appears from the context that it is Andrew Williams, an attorney who represented Swammi after Bloom.

[6] Swammi does not, in its brief, name the witness whose testimony is the subject of this allegation of error, nor does it describe the purpose of the cross-examination. But it appears from its references to the transcript that the witness must have been Eslinger.

standard of care.

The trial court has discretion to determine the scope of cross-examination, and only an abuse of that discretion warrants reversal. *Armstrong v. Gordon*, 871 N.E.2d 287, 293 (Ind. Ct. App. 2007) *reh'g denied, trans. denied*. Cross-examination is permissible as to the subject matter covered on direct examination, including any matter that tends to elucidate, modify, explain, contradict, or rebut testimony the witness gives during direct examination. *Id*.

The scope of cross-examination of an expert witness is generally broader than that permitted of other witnesses, *N. Indiana Pub. Serv. Co. v. Otis*, 145 Ind. App. 159, 200, 250 N.E.2d 378, 404 (1969), and it "is axiomatic that the accuracy, consistency, and credibility of an expert's opinions may properly be challenged by vigorous cross-examination, presentation of contrary evidence, argument of counsel, and resolution by the trier of fact." *Walker v. Cuppett*, 808 N.E.2d 85, 95 (Ind. Ct. App. 2004). We cannot say the trial court abused its discretion in allowing cross-examination relevant to this witness's qualification to testify as an expert about whether a fellow attorney's performance satisfied the standard of care.

Neither party directs us to Indiana decisions that address whether an expert witness's prior disciplinary violations are relevant to the expert's credibility or qualification, but we find decisions from other jurisdictions helpful. In *Sneed v. Stovall*, 22 S.W.3d 277, 280-82 (Tenn. Ct. App. 1999), *appeal denied*, Sneed asserted the trial court erred by allowing Stovall to present proof of her medical expert's past conduct. Specifically, she asserted, as does Swammi, that specific instances of misconduct by the expert were excluded by Evid R.

11

608(b).[7]

The *Sneed* court noted the expert's role as a witness would be to

> establish the standard of care for practicing physicians in the community and that the conduct of the defendants breached or violated that standard of care. Obviously, there will be countervailing proof concerning the standard of care and the violation thereof, and the jury must give the testimony of every witness who testifies the weight, faith, and credit that the testimony deserves. Certainly, the truthfulness of the witness will be a matter of grave concern for the jury in making this determination. [The expert] was bound by the ethical rules of his profession, and yet engaged in a practice of deception for a number of years even though he knew that his acts could constitute grounds for revocation of his license. His veracity as a witness should surely be questioned by virtue of this conduct.
>
> Moreover, we must consider the context of [the expert's] role. He is, in effect, pronouncing a judgment as to the conduct of fellow physicians. It seems to this Court that one who undertakes such a task is exposed to a determination of his own view of the profession by virtue of his own conduct. [The expert's] conduct could be construed to show disdain for a physician's obligation to practice the profession on the highest ethical plane with an ongoing deception during the continuance of the activities.
>
> In short, the jury must determine whether [the expert's] testimony concerning the conduct of the defendants is truthful and in giving weight to his testimony, the jury should have the benefit of evidence concerning his veracity and character.
>
> The trial court obviously determined that defendants' proposed cross-examination would elicit relevant evidence, and that the probative value of the evidence, under the facts of this case, substantially outweighs its prejudicial effect. The trial court did not abuse its discretion in denying the motion *in limine*.

---

[7] Indiana Evidence Rule 608(b) provides:

> For the purpose of attacking or supporting the witness's credibility, other than conviction of a crime as provided in Rule 609, specific instances may not be inquired into or proven by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The Tennessee version of Rule 608 is substantially similar to the Indiana rule, but includes additional requirements that 1) the court on request must hold a hearing outside the jury's presence and must determine the alleged conduct has probative value and that a reasonable factual basis exists for the inquiry, and 2) generally, the conduct must have occurred less than ten years before commencement of the action. Tenn. R. Evid. 608(b).

12

*Id.* at 281-82. *And see generally* George L. Blum, Annotation, *Propriety of questioning expert witness regarding specific incidents or allegations of expert's unprofessional conduct or professional negligence*, 11 A.L.R.5th 1 (1993).

We agree with the *Sneed* reasoning. Here, as in *Sneed*, the expert's "veracity as a witness should surely be questioned by virtue of this conduct," as he was, "in effect, pronouncing a judgment as to the conduct of [a fellow professional]." 22 S.W.3d at 282. As one who undertakes such a task is exposed to a determination of his own view of the profession by virtue of his own conduct, *id.*, the jury should have the benefit of evidence concerning his veracity and character. Permitting the cross-examination of Swammi's expert was not error.

4. <u>Jury Instructions</u>

Swammi asserts the trial court erred in declining to instruct the jury that an attorney has an obligation to be "diligent." Swammi offered three instructions that included that term, but the trial court instead gave the pattern jury instructions that an attorney providing legal services must use the degree of care and skill that "a reasonably careful, skillful, and prudent attorney" would use. (Tr. at 861.)

We cannot find error on that ground. Swammi argues at some length that the trial court should have included "diligence" in the instructions it offered, but does not explain why it was prejudiced by the omission of that term, or even assert that it was. For a reviewing court to reverse a trial court, the record must demonstrate not only an erroneous ruling but

13

also resulting prejudice. *Homehealth, Inc. v. N. Indiana Pub. Serv. Co.*, 600 N.E.2d 970, 974 (Ind. Ct. App. 1992), *reh'g denied*. "Error unaccompanied by prejudice is not ground for reversal." *Id*.

"Diligence" is defined as "[c]are; caution; the attention and care required from a person in a given situation." Black's Law Dictionary 468 (Seventh ed. 1999). A trial court is not required to accept tendered instructions and give them in the exact language in which they are submitted. *DeBoor v. State*, 243 Ind. 87, 93, 182 N.E.2d 250, 253 (1962), *cert. denied*. "It may, so long as they are proper, give instructions in its own language, and when a subject is substantially covered in an instruction given by the court, it is not error to refuse one tendered by the defendant which is in substance the same but is couched in different language." *Id*. As "diligence" is in substance the same as "care" in the context of an attorney's duty to a client, declining to instruct as to "diligence" was not error.

5.    Exclusion of Evidence

Finally, Swammi asserts "excluding Swammi's mitigation expense evidence was contrary to law." (Appellant's Br. at 40.) We are unable to address that allegation of error, because Swammi does not tell us what evidence was excluded or why. It begins by stating "Shambaugh's *in limine* argument is premised on *Hedrick v. Tabbert*, 722 N.E.2d 1269 (Ind. Ct. App. 2000), *(id)*" but never explains, either in its argument section, the statement of facts, or statement of the case, what that "*in limine* argument" was or what relevance it might have had to "mitigation expense evidence." Next, Swammi says it "made offers of proof of Mr. William's [sic] charges, (Tr. 329-332), and of the nexus between Shambaugh's failure to

preserve due process and Mr. Williams' work," (Appellant's Br. at 40). But Swammi never tells us what the "charges" were, what the offer of proof was, or why "due process" was not "preserved."

Briefs should be prepared "so that each judge, considering the brief alone and independent of the transcript, can intelligently consider each question presented." *Pluard v. Patients Compensation Fund,* 705 N.E.2d 1035, 1038 (Ind. Ct. App. 1999), *trans. denied.* It must be prepared so that all questions can be determined by the court from an examination of the brief without having to examine the record, because there is only one transcript to be shared among all the judges. *Id.* As Swammi's argument on this issue does not comply with that standard, we decline to address that allegation of error.

We affirm the trial court in all respects.

Affirmed.

FRIEDLANDER, J., and BARNES, J., concur.