# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
_____

**BRENDA J. SNEED,**

    Plaintiff-Appellant,

Vs.

**THOMAS G. STOVALL, M.D.,
GUY VOELLER, M.D., and
UNIVERSITY PHYSICIANS
FOUNDATION, d/b/a
UNIVERSITY OF TENNESSEE
MEDICAL GROUP, INC.,**

    Defendants-Appellees.

Shelby Circuit No. 57955T.D.
C.A. No. W1998-00607-COA-R9-CV

**FILED**

**December 15, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

_____

FROM THE SHELBY COUNTY CIRCUIT COURT
THE HONORABLE KAREN R. WILLIAMS, JUDGE

Robert L. Green;Neely, Green, Fargarson,
Brooke & Summers, of Memphis
Bruce Kelley, Jr., of Memphis
Steven R. Walker of Memphis
For Appellant

William H. Haltom, Jr.; Thomason, Hendrix,
Harvey, Johnson & Mitchell of Memphis
For Appellees

*AFFIRMED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**

CONCUR:

**DAVID R. FARMER, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

This case is before the Court pursuant to T.R.A.P. 9. Plaintiff/Appellant, Brenda Sneed, appeals from the order of the trial court that denied her motion *in limine* concerning inquiry about disciplinary proceedings against plaintiff's medical expert witness.

Plaintiff filed a complaint on November 23, 1993, against Dr. Thomas G. Stovall, University Physicians Foundation, d/b/a UT Medical Group, Inc., and Dr. Guy R. Voeller, alleging that the defendants committed medical malpractice in their care and treatment of the plaintiff. On May 10, 1996, counsel for the defendants took the discovery deposition of plaintiff's medical expert, Dr. David Swan. During the course of the deposition, defense counsel examined Dr. Swan about the status of his medical license, and whether he had been the subject of any disciplinary proceedings. Dr. Swan responded that he had not. Several months later, however, defense counsel learned that Dr. Swan had been the subject of investigations and hearings before the Kentucky State Board of Medical Licensure (KSBML). Plaintiff filed a Motion *in Limine* on October 15, 1997, to prohibit defendants from "making a disclosure of any disciplinary action taken by the Board of Medical Licensure for the State of Kentucky against Dr. David S. Swan, M.D., during the *voir dire* of the jury or at any time during the trial of the cause."

The facts leading up to the investigation by the KSBML are as follows: David Swan, M.D., is board-certified in obstetrics and gynecology. In June 1995, an "initiating grievance" was filed with the Kentucky Board of Medical Licensure alleging that Dr. Swan engaged in inappropriate sexual behavior with some of his patients. On September 26, 1995, Dr. Swan gave a statement to Doug Wilson, a KSBML investigator, regarding the complaints and grievances against him. Swan admitted that between early 1975 and late 1981, he engaged in inappropriate sexual behavior with some of his patients. On February 15, 1996, The KSBML held a hearing regarding the complaints and grievances against Dr. Swan. The Board's Inquiry Panel asked that Dr. Swan enter into an Agreed Order of Probation to avoid issuing an Administrative Complaint against Dr. Swan's Kentucky medical license. Dr. Swan entered into an Agreed Order of Probation on June 24, 1996, which, among other things, put Swan on

2

probation for five years.

Upon consideration of the evidence, the trial court denied plaintiff's Motion *in limine*. The order denying the motion states: "The Court is of the further opinion because of Dr. Swan's untruthfulness, that at the trial of this cause counsel for the defendants shall be permitted to inquire into the alleged facts underlying Dr. Swan's disciplinary proceeding." Plaintiff's motion in the trial court for interlocutory appeal pursuant to T.R.A.P. 9 was granted, and this Court granted plaintiff's application for permission to appeal.

The issues presented for review as stated in plaintiff-appellant's brief are:

> 1. Whether the trial court erred in concluding that Dr. Swan had exhibited a "pattern of untruthfulness."
>
> 2. Whether the trial court erred in overruling Plaintiff's Motion in limine and ruling that the Defendants would be permitted to present proof to the jury of 17 to 24 year-old instances of inappropriate sexual conduct by Plaintiff's medical expert, Dr. David Swan.

As to plaintiff-appellant's first issue, the judge stated:

> But the conduct discussed before me is the answer to a statement, an answer to a question. "Have you been the subject of any disciplinary proceedings, medical disciplinary proceeding regarding your license?" Answer, "No, sir." I believe that that answer was untruthful. I believe from the records presented to me that, in 1978, Dr. Swan had his license called into challenge in Fayette County and that they made a ruling that his conduct was inappropriate.
>
> . . . But what troubles me most about it is that then he never bothers to mention it to the Kentucky Board of Medical Licensure, which begins to suggest a pattern of untruthfulness. I believe that if I had been called upon to respond by letter to a complaint filed against me by someone that I would feel that I was involved in a disciplinary matter. So, therefore, I will allow the defense to inquire along those lines, and the jury can decide.

Plaintiff contends that the trial court made two factual errors in finding Dr. Swan's testimony untruthful. She first asserts that the trial court erred in its conclusion that Dr. Swan was untruthful in his deposition with regard to whether he had been the subject of disciplinary proceedings. Plaintiff also submits that the KSBML has bifurcated proceedings in dealing with grievances filed against doctors: first, an investigation of the facts; second, if necessary, a disciplinary proceeding. Plaintiff argues that since Dr.

Swan entered into an Agreed Order of Probation, there was no Administrative Complaint issued against his license and, therefore, no formal disciplinary proceedings. Thus, plaintiff argues that Dr. Swan answered truthfully when he said he had not been the subject of any "disciplinary proceedings." Plaintiff further submits that the court misconstrued the facts in the record to conclude that there was a pattern of untruthfulness. She contends that Dr. Swan knew that the KSBML had a copy of the October 31, 1978 letter, and thus, there was no need to "mention it" to the KSBML.

Considering the record before us, we conclude that the trial court did not err. At the time of the deposition on May 10, 1996, Dr. Swan knew that a complaint had been filed against him in the past with the Grievance Committee of the Fayette County Kentucky Medical Society alleging improper sexual contact with a patient and that the Medical Society issued an Opinion on October 31, 1978, finding that his conduct was inappropriate. Dr. Swan was also aware that a complaint was filed with the Kentucky State Board of Medical Licensure on June 15, 1995. He was also aware that he gave a statement on August 8, 1995 to Mr. Doug Wilson, an investigator of the KSBML, regarding the complaints against him and that on September 26, 1995, Swan submitted a report to Mr. Wilson responding to the specific allegations in the complaint. Based on the foregoing, it is apparent that Swan knew he was under investigation by the licensing board. Certainly, Dr. Swan knew that the board had the power to impose sanctions to the extent of revoking his license. The investigation of necessity must be a part of any proceedings leading to imposition of sanctions. It appears to this Court that the usual and ordinary meaning of "proceedings" would include involvement by the board in considering imposition of sanctions. Simply stated, Dr. Swan answered untruthfully at his deposition.

Plaintiff asserts in her second issue that the trial court erred as a matter of law by overruling her motion *in limine* and ruling that defendants would be permitted to present proof of Dr. Swan's past conduct. Specifically, plaintiff asserts that the specific instances of inappropriate sexual conduct committed by Dr. Swan are excluded by Tennessee Rules of Evidence, 608 (b), which provides:

**Rule 608. Evidence of character and conduct of witness**.

4

(b) *Specific Instances of Conduct.* - Specific instances of conduct of a witness for the purpose of attacking or supporting the witness's credibility, other than convictions of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, if probative of truthfulness or untruthfulness and under the following conditions, be inquired into on cross-examination of the witness concerning the witness's character for truthfulness or untruthfulness or concerning the character for truthfulness or untruthfulness of another witness as to which the character witness being cross-examined has testified. The conditions which must be satisfied before allowing inquiry on cross-examination about such conduct probative solely of truthfulness or untruthfulness are:

    (1) The court upon request must hold a hearing outside the jury's presence and must determine that the alleged conduct has probative value and that a reasonable factual basis exists for the inquiry;

    (2) The conduct must have occurred no more than ten years before commencement of the action or prosecution, but evidence of a specific instance of conduct not qualifying under this paragraph (2) is admissible if the proponent gives to the adverse party sufficient advance notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence and the court determines in the interests of justice that the probative value of that evidence, supported by the specific facts and circumstances, substantially outweighs its prejudicial effect . . .

Tenn.R.Evid. 608(b).

Plaintiff also argues that the conduct occurred more than seventeen years ago, that the conduct is not "probative solely of truthfulness or untruthfulness," and that the probative value of such evidence does not "substantially outweigh its prejudicial effect."

Defendants assert that Tenn.R.Evid. 608 (b) is not applicable in this case, but Rule 402 and Rule 403, Tenn.R.Evid., are the appropriate rules:

**Rule 402. Relevant evidence generally admissible; irrelevant evidence inadmissible.**

All relevant evidence is admissible except as provided by the Constitution of the United States, the Constitution of Tennessee, these rules, or other rules or laws of general application in the courts of Tennessee. Evidence which is not relevant is not admissible.

**Rule 403. Exclusion of Relevant evidence on grounds of prejudice, confusion, or waste of time.**

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time,

5

or needless presentation of cumulative evidence.

Tenn.R.Evid. 402 and 403.

Defendants assert that 608(b) deals with impeachment of a witness by cross-examination concerning a witness's "prior bad acts" and that they are not seeking to impeach Dr. Swan's credibility by evidence of prior convictions, prior bad acts, subsequent convictions, or subsequent bad acts. They argue that they will present evidence regarding his current medical licensure, medical status, and medical practice. However, defendants acknowledge that cross-examination and extrinsic evidence regarding Swan's medical licensure will include evidence of Dr. Swan's past misconduct. Defendants also argue that the current state of Dr. Swan's medical licensure and the history and circumstances regarding it are relevant issues in this case. They further point out that even though the misconduct occurred sixteen years ago, the restrictions on his license are in place now.

Tennessee Law of Evidence provides:

§ 608.1. Overview.

> It prescribes when . . . specific instances of conduct, other than criminal convictions, may be used to impeach or rehabilitate a witness by proving the truthful or untruthful character of that witness. It should be obvious that Rule 608 is an exception to the general principle of Rule 404(a) that character evidence is inadmissible . . . Rule 608 is based on the idea that sometimes character evidence should be admitted. By implication, the rule accepts the idea that a person's character is both a relevant and important factor in assessing that person's credibility. But it should be noted that Rule 608 opens the door to proof of only certain aspects of a person's character. This rule authorizes proof of a person's character for truthfulness or untruthfulness. Proof of other facets of character is not affected by Rule 608.

Neil P. Cohen, et al., **Tennessee Law of Evidence** § 608.1 at 345 (3d ed. 1995).

As above noted, the trial court correctly determined that Dr. Swan answered untruthfully in his discovery deposition and that the defendants can question him concerning the inconsistencies. Plaintiff asserts that no inquiry should be made to elicit evidence of Dr. Swan's specific acts with patients because: these acts occurred more than ten years before the commencement of this action; they do not constitute untruthful behavior; and, in any event, the probative value of the evidence does not

substantially outweigh its prejudicial effect. Where the cross-examination leads will, of course, depend on the witness's answer. Under 608 (b), Dr. Swan's specific acts may only be inquired into on cross-examination and may not be established by extrinsic evidence. Consequently, if Dr. Swan is questioned about the specific acts and denies their occurrence, the question would arise as to whether extrinsic evidence is appropriate.

Defendants assert that Rule 608(b) is not applicable to this case, because the appellees are not attempting to impeach Dr. Swan's credibility as to the specific "prior bad acts." Rather, they seek to impeach his credibility because of his untruthful answers under oath concerning prior disciplinary proceedings, and they seek to show his current status as a practicing physician.

The trial judge has wide discretion in the matter of qualification of expert witnesses. *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439 (Tenn. 1992). However, "credibility is to be distinguished from the testimonial competency of a witness." 81 **Am.Jur.2d**, *Witnesses* Sec. 1027 at p. 841.

> Essentially the same basic tests which are commonly applied in the evaluation of ordinary evidence should be used in judging the weight and sufficiency of expert and opinion testimony.

31 **Am.Jur.2d** *Expert and Opinion Evidence* Sec. 129 at p. 137.

In the instant case, Dr. Swan's role as a witness will be to establish the standard of care for practicing physicians in the community and that the conduct of the defendants breached or violated that standard of care. Obviously, there will be countervailing proof concerning the standard of care and the violation thereof, and the jury must give the testimony of every witness who testifies the weight, faith, and credit that the testimony deserves. Certainly, the truthfulness of the witness will be a matter of grave concern for the jury in making this determination. Dr. Swan was bound by the ethical rules of his profession, and yet engaged in a practice of deception for a number of years even though he knew that his acts could constitute grounds for revocation of his license. His veracity as a witness should surely be questioned by virtue of this conduct.

Moreover, we must consider the context of Dr. Swan's role. He is, in effect,

7

pronouncing a judgment as to the conduct of fellow physicians. It seems to this Court that one who undertakes such a task is exposed to a determination of his own view of the profession by virtue of his own conduct. Dr. Swan's conduct could be construed to show disdain for a physician's obligation to practice the profession on the highest ethical plane with an ongoing deception during the continuance of the activities.

In short, the jury must determine whether Dr. Swan's testimony concerning the conduct of the defendants is truthful and in giving weight to his testimony, the jury should have the benefit of evidence concerning his veracity and character.

The trial court obviously determined that defendants' proposed cross-examination would elicit relevant evidence, and that the probative value of the evidence, under the facts of this case, substantially outweighs its prejudicial effect. The trial court did not abuse its discretion in denying the motion *in limine*.

Accordingly, the order of the trial court is affirmed, and this case is remanded for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellant.

_____
**W. FRANK CRAWFORD, P.J.**, **W.S.**

**CONCUR:**


_____
**DAVID R. FARMER, JUDGE**

_____
**HOLLY KIRBY LILLARD, JUDGE**

8