IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 20, 2004 Session

## BRENDA J. SNEED v. THOMAS G. STOVALL, M.D., ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. 57955 T.D.     Karen R. Williams, Judge**

_____

**No. W2003-00779-COA-R3-CV - Filed April 1, 2004**
_____

Plaintiff filed suit against Defendants alleging that Defendants committed medical malpractice. At the conclusion of the trial, the jury returned a verdict in favor of Defendants. Plaintiff appeals the trial court's limiting Plaintiff's *voir dire* concerning his medical expert, denial of Plaintiff's renewed motion *in limine*, refusal to include proposed jury instructions, and refusal to strike a third party opinion from the deposition of Plaintiff's expert. We affirm the decisions of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Robert L. Green and Bruce Kelley, Jr., Memphis, Tennessee, for the Appellant, Brenda J. Sneed.

William H. Haltom, Jr., for the appellees, Thomas Stovall, M.D., and University Physician Foundation d/b/a U.T. Medical Group, Inc.

William W. Dunlap and Tabitha F. McNabb, Memphis, Tennessee, for the appellee, Guy Voeller, M.D.

**OPINION**

This Court first addressed this case in *Sneed v. Stovall*, 22 S.W.3d 277 (Tenn. Ct. App.

1999):

[Brenda J. Sneed] Plaintiff [(Plaintiff)] filed a complaint on November 23, 1992, against Dr. Thomas G. Stovall [(Dr. Stovall)], University Physicians Foundation, d/b/a UT Medical Group, Inc. [(UT Medical Group)], and Dr. Guy R.

Voeller [(Dr. Voeller, or collectively with Dr. Stovall and UT Medical Group as the Defendants)], alleging that the defendants committed medical malpractice in their care and treatment of the plaintiff. On May 10, 1996, counsel for the defendants took the discovery deposition of plaintiff's medical expert, Dr. David Swan [(Dr. Swan)]. During the course of the deposition, defense counsel examined Dr. Swan about the status of his medical license, and whether he had been the subject of any disciplinary proceedings. Dr. Swan responded that he had not. Several months later, however, defense counsel learned that Dr. Swan had been the subject of investigations and hearings before the Kentucky State Board of Medical Licensure (KSBML). Plaintiff filed a Motion *in Limine* on October 15, 1997, to prohibit defendants from "making a disclosure of any disciplinary action taken by the Board of Medical Licensure for the State of Kentucky against [David S. Swan, M.D.], during the *voir dire* of the jury or at any time during the trial of the cause."

The facts leading up to the investigation by the KSBML are as follows: David Swan, M.D., is board-certified in obstetrics and gynecology. In June 1995, an "initiating grievance" was filed with the [KSBML] alleging that Dr. Swan engaged in inappropriate sexual behavior with some of his patients. On September 26, 1995, Dr. Swan gave a statement to Doug Wilson, a KSBML investigator regarding the complaints and grievances against him. Swan admitted that between early 1975 and late 1981, he engaged in inappropriate sexual behavior with some of his patients. On February 15, 1996, [t]he KSBML held a hearing regarding the complaints and grievances against Dr. Swan. The Board's Inquiry Panel asked that Dr. Swan enter into an Agreed Order of Probation to avoid issuing an Administrative Complaint against Dr. Swan's Kentucky medical license. Dr. Swan entered into an Agreed Order of Probation on June 24, 1996, which, among other things, put Swan on probation for five years.

Upon consideration of the evidence, the trial court denied plaintiff's Motion *in limine*. The order denying the motion states: "The Court is of the further opinion because of Dr. Swan's untruthfulness, that at the trial of this cause counsel for the defendants shall be permitted to inquire into the alleged facts underlying Dr. Swan's disciplinary proceeding." Plaintiff's motion in the trial court for interlocutory appeal pursuant to T.R.A.P. 9 was granted, and this Court granted plaintiff's application for permission to appeal.

*Sneed*, 22 S.W.3d at 278-79. In addressing the Plaintiff's first issue of whether the court erred in concluding that Dr. Swan had exhibited a "pattern of untruthfulness," this Court held:

Considering the record before us, we conclude that the trial court did not err. At the time of the deposition on May 10, 1996, Dr. Swan knew that a complaint had been filed against him in the past with the Grievance Committee of the Fayette County Kentucky Medical Society alleging improper sexual contact with a patient

-2-

and that the Medical Society issued an Opinion on October 31, 1978, finding that his conduct was inappropriate. Dr. Swan was also aware that a complaint was filed with the Kentucky State Board of Medical Licensure on June 15, 1995. He was also aware that he gave a statement on August 8, 1995 to Mr. Doug Wilson, an investigator of the KSBML, regarding the complaints against him and that on September 26, 1995, Swan submitted a report to Mr. Wilson responding to the specific allegations in the complaint. Based on the foregoing, it is apparent that Swan knew he was under investigation by the licensing board. . . . Simply stated, Dr. Swan answered untruthfully at his deposition.

*Id*. at 279-80.

In addressing Plaintiff's second issue of whether the trial court erred in denying her motion *in limine* thereby allowing Defendants to present proof regarding Dr. Swan's past conduct, this Court stated:

Specifically, plaintiff asserts that the specific instances of inappropriate sexual conduct committed by Dr. Swan are excluded by Tennessee Rules of Evidence, 608 (b), which provides:

> **Rule 608. Evidence of character and conduct of witness**.
> (b) Specific Instances of Conduct. - Specific instances of conduct of a witness for the purpose of attacking or supporting the witness's credibility, other than convictions of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, if probative of truthfulness or untruthfulness and under the following conditions, be inquired into on cross-examination of the witness concerning the witness's character for truthfulness or untruthfulness or concerning the character for truthfulness or untruthfulness of another witness as to which the character witness being cross-examined has testified. The conditions which must be satisfied before allowing inquiry on cross-examination about such conduct probative solely of truthfulness or untruthfulness are:
>
> > (1) The court upon request must hold a hearing outside the jury's presence and must determine that the alleged conduct has probative value and that a reasonable factual basis exists for the inquiry;
> >
> > (2) The conduct must have occurred no more than ten years before commencement of the action or prosecution, but evidence of a specific instance of conduct not qualifying under this paragraph (2) is admissible if the proponent gives to the adverse party sufficient

-3-

advance notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence and the court determines in the interests of justice that the probative value of that evidence, supported by the specific facts and circumstances, substantially outweighs its prejudicial effect . . .

Tenn.R.Evid. 608(b).

Plaintiff also argues that the conduct occurred more than seventeen years ago, that the conduct is not "probative solely of truthfulness or untruthfulness," and that the probative value of such evidence does not "substantially outweigh its prejudicial effect."

Defendants assert that Tenn. R. Evid. 608(b) is not applicable in this case, but Rule 402 and Rule 403, Tenn. R. Evid., are the appropriate rules:

> **Rule 402. Relevant evidence generally admissible; irrelevant evidence inadmissible**.
> All relevant evidence is admissible except as provided by the Constitution of the United States, the Constitution of Tennessee, these rules, or other rules or laws of general application in the courts of Tennessee. Evidence which is not relevant is not admissible.

> **Rule 403. Exclusion of Relevant evidence on grounds of prejudice, confusion, or waste of time**.
> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Tenn.R.Evid. 402 and 403.

Defendants assert that 608(b) deals with impeachment of a witness by cross-examination concerning a witness's "prior bad acts" and that they are not seeking to impeach Dr. Swan's credibility by evidence of prior convictions, prior bad acts, subsequent convictions, or subsequent bad acts. They argue that they will present evidence regarding his current medical licensure, medical status, and medical practice. However, defendants acknowledge that cross-examination and extrinsic evidence regarding Swan's medical licensure will include evidence of Dr. Swan's past misconduct. Defendants also argue that the current state of Dr. Swan's medical licensure and the history and circumstances regarding it are relevant issues in this case. They further point out that even though the misconduct occurred sixteen years ago, the restrictions on his license are in place now.

Tennessee Law of Evidence provides:

> § 608.1. Overview.
> It prescribes when . . . specific instances of conduct, other than criminal convictions, may be used to impeach or rehabilitate a witness by proving the truthful or untruthful character of that witness. It should be obvious that Rule 608 is an exception to the general principle of Rule 404(a) that character evidence is inadmissible . . . Rule 608 is based on the idea that sometimes character evidence should be admitted. By implication, the rule accepts the idea that a person's character is both a relevant and important factor in assessing that person's credibility. But it should be noted that Rule 608 opens the door to proof of only certain aspects of a person's character. This rule authorizes proof of a person's character for truthfulness or untruthfulness. Proof of other facets of character is not affected by Rule 608.

Neil P. Cohen, et al., Tennessee Law of Evidence § 608.1 at 345 (3d ed. 1995).

As above noted, the trial court correctly determined that Dr. Swan answered untruthfully in his discovery deposition and that the defendants can question him concerning the inconsistencies. Plaintiff asserts that no inquiry should be made to elicit evidence of Dr. Swan's specific acts with patients because: these acts occurred more than ten years before the commencement of this action; they do not constitute untruthful behavior; and, in any event, the probative value of the evidence does not substantially outweigh its prejudicial effect. Where the cross-examination leads will, of course, depend on the witness's answer. Under 608 (b), Dr. Swan's specific acts may only be inquired into on cross-examination and may not be established by extrinsic evidence. Consequently, if Dr. Swan is questioned about the specific acts and denies their occurrence, the question would arise as to whether extrinsic evidence is appropriate.

Defendants assert that Rule 608(b) is not applicable to this case, because the appellees are not attempting to impeach Dr. Swan's credibility as to the specific "prior bad acts." Rather, they seek to impeach his credibility because of his untruthful answers under oath concerning prior disciplinary proceedings, and they seek to show his current status as a practicing physician.

The trial judge has wide discretion in the matter of qualification of expert witnesses. *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439 (Tenn. 1992). However, "credibility is to be distinguished from the testimonial competency of a witness." 81 Am.Jur.2d, Witnesses Sec. 1027 at p. 841.

> Essentially the same basic tests which are commonly applied in the evaluation of ordinary evidence should be used in judging the weight and sufficiency of expert and opinion testimony.

31 Am.Jur.2d *Expert and Opinion Evidence* Sec. 129 at p. 137.

> In the instant case, Dr. Swan's role as a witness will be to establish the standard of care for practicing physicians in the community and that the conduct of the defendants breached or violated that standard of care. Obviously, there will be countervailing proof concerning the standard of care and the violation thereof, and the jury must give the testimony of every witness who testifies the weight, faith, and credit that the testimony deserves. Certainly, the truthfulness of the witness will be a matter of grave concern for the jury in making this determination. Dr. Swan was bound by the ethical rules of his profession, and yet engaged in a practice of deception for a number of years even though he knew that his acts could constitute grounds for revocation of his license. His veracity as a witness should surely be questioned by virtue of this conduct.

> Moreover, we must consider the context of Dr. Swan's role. He is, in effect, pronouncing a judgment as to the conduct of fellow physicians. It seems to this Court that one who undertakes such a task is exposed to a determination of his own view of the profession by virtue of his own conduct. Dr. Swan's conduct could be construed to show disdain for a physician's obligation to practice the profession on the highest ethical plane with an ongoing deception during the continuance of the activities.

> In short, the jury must determine whether Dr. Swan's testimony concerning the conduct of the defendants is truthful and in giving weight to his testimony, the jury should have the benefit of evidence concerning his veracity and character.

> The trial court obviously determined that defendants' proposed cross-examination would elicit relevant evidence, and that the probative value of the evidence, under the facts of this case, substantially outweighs its prejudicial effect. The trial court did not abuse its discretion in denying the motion in limine.

> Accordingly, the order of the trial court is affirmed, and this case is remanded for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellant.

*Sneed*, 22 S.W.3d at 280-82. Plaintiff subsequently filed an application for appeal to the Tennessee Supreme Court which was denied on May 22, 2000. *Id*. at 277.

-6-

Upon remand, the evidentiary deposition of Dr. Swan was taken. Plaintiff filed a motion *in limine* to strike any testimony from the evidentiary testimony concerning the trial court's or court of appeals' opinion of Dr. Swan's truthfulness. In its order on Plaintiff's motion *in limine*, the trial court found that six portions of the deposition that referenced either the trial court's or court of appeals' opinion of Dr. Swan's truthfulness should be stricken.

During the *voir dire* of this case, Plaintiff's counsel attempted to ask the jurors about Plaintiff's expert, Dr. Swan. Upon the Defendants' objection, the trial court precluded Plaintiff's counsel from asking the jurors any further questions concerning Dr. Swan.

At the conclusion of proof, Plaintiff filed with the court six requested special jury instructions which the trial court denied. The jury returned a verdict in favor of the Defendants and the trial court entered a judgment on the jury's verdict. Plaintiff filed a motion for new trial which was denied by the trial court. Plaintiff timely filed her notice of appeal.

## Issues Presented

Plaintiff appeals and raises the following issues, as we restate them, for our review:

1.       Whether the trial court erred in limiting Plaintiff's *voir dire* as to the jurors' bias or prejudice toward Plaintiff's medical expert, Dr. Swan, because he had, in the past, engaged in improper sexual behavior and because he had erroneously responded to a question in a discovery deposition;

2.       Whether the trial court erred in denying Plaintiff's renewed motion *in limine* to disallow testimony about Dr. Swan's sexual acts with his patients that occurred over twenty years before the trial;

3.       Whether the trial court erred in refusing to charge the jury with Plaintiff's proposed jury instructions;

4.       Whether the trial court erred in refusing to instruct the jury on how they should consider evidence of Dr. Swan's prior sexual misconduct and allegations that Dr. Swan had lied under oath; and

5.       Whether the trial court erred in refusing to strike from Dr. Swan's evidentiary deposition a statement made by Dr. Swan that he had been determined by others to have been untruthful in a prior discovery deposition.

Plaintiff first argues that the trial court erred in limiting Plaintiff's *voir dire* concerning its expert, Dr. Swan. "The scope and extent of the jury examination are within the sound discretion of the trial judge." *State v. Poe*, 755 S.W.2d 41, 45 (Tenn. 1988) (citing *State v. Jefferson*, 529 S.W.2d 674, 682 (Tenn. 1975)). Accordingly, we will not reverse the trial court's decision to limit Plaintiff's *voir dire* unless the trial court abused its discretion.

Tennessee Rule of Civil Procedure 47.01, examination of jurors, provides in pertinent part:

> The court shall permit the parties or their attorneys to conduct the examination. At or near the beginning of jury selection, the court shall permit counsel to introduce themselves and make brief, non-argumentative remarks that inform the potential jurors of the general nature of the case.

Tenn. R. Civ. P. 47.01. Further, "a prospective juror may be examined for the purpose of showing that he is biased or prejudiced." *Chambers v. Bradley County*, 384 S.W.2d 43, 44 (Tenn. Ct. App. 1964). However, a party may not use *voir dire* to indoctrinate the jurors or exact a pledge from the jurors that they will vote a certain way. C.J.S. *Juries* § 463 (1997); *see also Chambers*, 384 S.W.2d at 44-45.

In this case, Plaintiff's counsel stated:

> Now, ladies and gentleman, I have a couple of questions that I want to get into, and I want to preface the questions that I am going to be asking you by making this statement to you. In this case, Dr. David Swan, a physician who lives in the state of Kentucky, is going to testify by a video deposition. He is going to testify against Dr. Stovall and Dr. Voeller. He is going to say that in his opinion, these gentlemen did not comport with the standard of care expected of doctors in this community.
>
> In this deposition that you're going to see, you are going to learn that some 25 or 20 years ago back in 1975 or 1980 in that era that Dr. Swan was guilty of inappropriate sexual contact and conduct towards his patients. Dr. Swan . . . is an OB/GYN. He has female patients. He is going to tell you in that deposition that he had a problem back at that time and that he sought psychological care for that and treatment for that problem. Will you, ladies and gentlemen, be able to accept that testimony from Dr. Swan?

At this point, Defendants asked to approach the bench. Defendants argued that Plaintiff was arguing his case to the jury and further that he was trying to extract a promise from the jurors. After hearing arguments from both parties, the trial court stated:

I'm going to disallow any further questioning about how the jury will approach Dr. Swan and his testimony because we're going to get off track and we will never get back.

The trial court properly sustained Defendants' objection as it could have construed Plaintiff's question as an attempt to exact a pledge from the jury that they would accept or believe Dr. Swan's testimony. After the trial court sustained Defendant's objection, the following transpired:

THE COURT: . . . . You may ask them if they are willing to listen to all of the proof and consider all aspects of a person's testimony in rendering a decision. I don't want anything more than a general question.

(Whereupon the bench conference ended.)

[Plaintiff's Attorney]: Ladies and gentlemen, let me ask this question: Will each and every one of you listen to all of the evidence in this case, whatever it might be and on whatever subjects it might be on? Will you listen to all of the evidence in this case and then give it what weight, faith and credit you feel it's entitled to under Her Honor's charge? Can each of you do that?

(No response given.)

[Plaintiff's Attorney]: Is there anybody on this panel that feels that they cannot listen to all the proof, whatever it might be, and then consider that along with everything else and return your verdict? You can all do that?

(No response given.)

As previously mentioned, a party may "make brief, non-argumentative remarks that inform the potential jurors of the general nature of the case" and question jurors to determine if they are biased or prejudiced. Tenn. R. Civ. P. 47.01; *Chambers*, 384 S.W.2d at 44. In this case, Plaintiff had the opportunity to inform the jurors that this was a medical malpractice case and preview Dr. Swan's testimony concerning the Defendants' actions. In addition, Plaintiff was able to inform the jurors of Dr. Swan's prior sexual misconduct before the trial court sustained Defendants' objection. Finally, after the jurors had heard all the information provided by Plaintiff, Plaintiff was allowed an opportunity to determine the jurors' bias or prejudice by asking the jurors whether they would be able to listen to all of the evidence and testimony presented in the case including Dr. Swan's prior misconduct before rendering a decision.

Plaintiff's argument that the trial court erred in limiting its *voir dire* is also based on the contention that Plaintiff was not allowed to ask whether, after hearing that Dr. Swan made an untruthful statement in a deposition, the jurors would be so prejudiced that they would not consider Dr. Swan's medical testimony in rendering their decision. While the trial court could have allowed

Plaintiff to ask permissible *voir dire* questions on this issue, we cannot find that the trial court abused its discretion. The trial court limited Plaintiff's *voir dire* in the interest of time. *See* 47 Am. Jur. 2d *Jury* § 202 (1995) (citing *Centamore v. State*, 632 S.W.2d 778 (Tex. Ct. App. 1982)). Further, Plaintiff admits that "[t]he issue of an untruthful answer [in] a deposition is a significant issue[] but the issue of inappropriate sexual conduct by a doctor with a patient is nothing less than emotional dynamite." Plaintiff informed the jury about Dr. Swan's prior sexual misconduct and after the jury learned of Dr. Swan's conduct, Plaintiff was allowed to determine the jurors' reaction to this "emotional dynamite." Accordingly, the trial court did not commit reversible error in sustaining Defendants' objection.

## Motion *In Limine*

Plaintiff contends that the trial court erred in denying her renewed motion *in limine*. This Court affirmed the trial court's initial denial of her motion *in limine* because the trial court did not abuse its discretion in finding that the probative value of Dr. Swan's prior sexual misconduct and his untruthful statement given in a discovery deposition substantially outweighed its prejudicial effect. *Sneed v. Stovall*, 22 S.W.3d 277, 282 (Tenn. Ct. App. 1999). Plaintiff contends that the initial motion was renewed because of a change in circumstances. Specifically, Plaintiff points to the fact that at the time of this Court's prior decision, Dr. Swan's medical license was placed on probation and under other restrictions. Plaintiff argues that the restrictions on Dr. Swan's medical license were lifted by the time of Dr. Swan's evidentiary deposition. However, the change in the status of Dr. Swan's license does not change the fact that Dr. Swan was untruthful in his discovery deposition nor does it change the instances of sexual misconduct that led up to Dr. Swan's probation. The trial court's initial balancing test will not be disturbed as the probative value of this evidence remains the same. Accordingly, the trial court did not err in denying Plaintiff's renewed motion *in limine*.

## Jury Instructions

Plaintiff next contends that the trial court committed reversible error by failing to include two of Plaintiff's requested jury instructions in the instructions actually given to the jury. Plaintiff requested the following jury instructions:

> 1. Specific instances of sexual conduct are not probative of truthfulness or untruthfulness.

> 2. Specific instance of misconduct by a witness may be used only to apply to that witnesses' character. In deciding what weight and credibility should be given to such testimony, you should consider the length of time that has elapsed between the occurrence of the specific instances of misconduct and the date when the witness testified, whether the witness has shown remorse and/or is contrite for such acts and his conduct since those instances of misconduct.

The relevant portion of the trial court's fifteen page jury instructions concerning the jury's evaluation of witnesses and expert testimony provide:

**15.04 Ordinary Observations and Experience** Although you must only consider the evidence in this case in reaching your verdict, you are not required to set aside your common knowledge. You are permitted to weigh the evidence in the light of your common sense, observations and experience.

. . . .

**2.03 Weighing Conflicting Testimony** Now, although you must consider all the evidence, you are not required to accept all of the evidence as true or accurate.

You should not decide an issue by the simple process of counting the number of witnesses who have testified on each side. You must consider all the evidence in the case. You may decide that the testimony of fewer witnesses on one side is more convincing than the testimony of more witnesses on the other side.

**2.20 Credibility of Witness** You are the sole and exclusive judges of the credibility or believability of the witnesses who have testified in this case. You must decide which witnesses you believe and how important you think their testimony is. You are not required to accept or reject everything a witness says. You are free to believe all, none, or part of any person's testimony.

In deciding which testimony you believe, you should rely on your own common sense and everyday experience. There is no fixed set of rules to use in deciding whether you believe a witness, but it may help you to think about the following questions:

. . . .

7. Was the witness making an honest effort to tell the truth, or did the witness evade questions?

8. Did the witness have any interest in the outcome of the case?

9. Did the witness have any motive, bias or prejudice that would influence the witness' testimony?

10. How reasonable was the witness' testimony when you consider all of the other evidence in the case?

11. Was the witness' testimony contradicted by what that witness has said or done at another time, by the testimony of other witnesses, or by other evidence?

12. Has there been evidence regarding the witness' intelligence, respectability, or reputation for truthfulness?

13. Has the witness' testimony been influenced by any promises, threats, or suggestions?

14. Did the witness admit that any part of the witness' testimony was not true?

-11-

. . . .

**2.30 Expert Testimony - Determination of Weight** Usually witnesses are not permitted to testify as to opinions or conclusion. However, a witness who has scientific, technical, or other specialized knowledge, skill, experience, training, or education may be permitted to give testimony in the form of an opinion. These witnesses are often referred to as "expert witnesses." In this case[,] several doctors, including the defendants, testified as expert witnesses.

**6.18/6.05 Standard of Medical Care Determined by Expert Testimony** It is your obligation to determine, from the testimony of these expert witnesses, the recognized standard of acceptable professional practice in each defendant's profession for this or a similar community. This is also referred to as the "Standard of Care." In this case you must determine the Standard of Care for both an Obstetrician and Gynecologist as well as a General Surgeon. In making this determination, you must only consider the opinions of the physicians, including the defendants, who have testified concerning this standard. If you find that the physicians disagree, then you must resolve the conflict by considering the following:

**2.30 Expert Testimony - Determination of Weight**

1. The education, qualifications, and experience of each doctor;
2. The credibility of each doctor;
3. The facts relied upon by each doctor to support his or her opinions; and
4. The reasoning used by each doctor to arrive at his or her opinions.

. . . .

**6.18 Standard (part 2)** The testimony of a physician as to what that physician personally would do or would not do or the personal opinion of a physician of what should have been done or could not have been done does not prove the standard of care.

After comparing the proposed instructions with the instructions actually given, we find that the substance of Plaintiff's proposed instructions were contained in the court's instructions, particularly instruction 2.30 concerning the determination of weight for expert testimony. *See Wilkerson v. Altizer*, 845 S.W.2d 744, 748-49 (Tenn. Ct. App. 1992). As a result, the trial court did not commit reversible error in excluding Plaintiff's requested instructions.

Plaintiff also contends that the trial court committed reversible error by not properly instructing the jury on how they should consider the evidence alleging Dr. Swan's sexual misconduct and untruthfulness in a discovery deposition. This Court finds that the jury

instructions given were sufficient instruction on how they should consider Dr. Swan's prior misconduct and untruthfulness.

## Testimony from Evidentiary Deposition

Plaintiff contends that the trial court erred by refusing to strike from the record testimony given by Dr. Swan at his evidentiary deposition. In Dr. Swan's evidentiary deposition, after being asked by Defendants whether he admitted that the previous testimony given in the discovery deposition was untruthful, Dr. Swan responded:

> I have testified, sir, that as I understood the question at the time, I felt that it was a truthful statement. I have also testified, sir, that subsequent to that, other opinions concerning the truthfulness of that statement have been reviewed by the Courts and I have [been] found to be untruthful in their interpretation of it. I have accepted their interpretation of that question and, therefore, on that basis, yes, sir, I was untruthful. At the time [of the discovery deposition] to the best of my ability I believe I was trying to answer that question in a truthful statement.

Plaintiff subsequently filed a motion *in limine* requesting the trial court to strike from Dr. Swan's evidentiary deposition any testimony disclosing either the trial court's or this Court's opinion of Dr. Swan's untruthfulness. In the trial court's order on Plaintiff's motion *in limine*, the trial court struck from the above quoted portion of Dr. Swan's testimony the words "by the Courts."

Dr. Swan's response to Defendants' question was his way of admitting he lied. The trial court properly left this testimony in the deposition for the jury to hear. Further, Plaintiff cites no legal authority for his argument and this Court, based on the foregoing, finds this issue to be without merit.

## Conclusion

In light of the foregoing, we affirm the decisions of the trial court. Costs of this appeal are taxed to the Appellant, Brenda J. Sneed, and her surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

-13-